Gertrude SONKIN and S.E. Chessin, derivatively on Behalf of Public Service Company of Indiana, Plaintiffs,

v.

Hugh A. BARKER, Darrell V. Menscer, Richard H. Blacklidge, Charles W. Campbell, Shelton M. Hannig, Dagmar R. Jones, Melvin Perelman, W. George Pinnell, Richard B. Stoner, Burr S. Swezey, Jr., Vernley R. Rehnstrom, James H. Pennington and Seth W. Shields, Defendants.

and

Public Service Company of Indiana, Nominal Defendant.

Nos. IP 84–291–C, IP 84–358–C.

United States District Court, S.D. Indiana, Indianapolis Division.

July 7, 1987.

Peter Tamulonis, Kightlinger & Gray, Indianapolis, Ind., Fred Taylor Isquith, Wolf Haldenstein Adler Freeman & Herz, New York City, for plaintiffs.

Robert E. Fiske, Jr., William A. Wurtz, Davis Polk & Wardwell, New York City, Greg K. Kimberlin, Plainsfield, Ind., for defendants.

*Memorandum*

BARKER, District Judge.

A thorough explication of the facts underlying this action need not be recited here. The court will therefore confine its discussion to the facts pertinent to the pending motions.

On February 17, 1984, plaintiff Gertrude Sonkin, a shareholder of PSI, filed a derivative action on behalf of PSI against present and former officers and directors of PSI and against PSI as a nominal defendant. Plaintiff shareholder S.E. Chessin filed a similar complaint on March 5, 1984. By order of this court dated June 1, 1984, those two actions were consolidated, and on January 2, 1985, the plaintiffs filed an amended complaint in the consolidated action. Briefly stated, the amended complaint seeks relief on behalf of PSI for the defendants' alleged "breaches of their respective common law fiduciary duties to [PSI] as officers and directors of PSI" and for "gross mismanagement of the Marble Hill Nuclear Power Facility construction project." The plaintiffs seek damages on behalf of the corporation for both direct and indirect losses associated with the abandoned Marble Hill construction project.

The defendants have filed a motion to dismiss on the ground that the named plaintiff shareholders are inadequate representatives of the company's shareholders because the positions they take in their complaint are contrary to the interests of the company and its other shareholders. Specifically, the defendants contend that PSI will seek approval of the Public Service Commission of Indiana to recover its Marble Hill losses through rate increases to its customers and that the plaintiffs' efforts in this action to prove waste and mismanagement on the part of the defendant officers and directors will damage the company's efforts to obtain the rate increase. The defendants further argue that these derivative claims are in direct conflict with PSI's defense efforts in the pending securities

fraud class action and the Wabash Valley litigation.[1]

Second, the defendants argue that the plaintiffs' action is premature because their claims for consequential damages suffered by PSI as a result of the class action and the Wabash Valley suit are essentially claims for indemnification. Because those claims are contingent on the outcome of those suits, and because PSI has not yet incurred any liability, the defendants maintain that the plaintiffs' action has not yet accrued.

In the alternative, the defendants request that the court stay this action in order to "avert the unnecessary risks [the derivative action] create[s] with respect to PSI's defense of the securities and Wabash litigations and its ability to recover its costs in Marble Hill through the rate proceedings," and because "a stay would avoid the possibility of needless repetition of legal proceedings and unnecessary expenditures of time and money by the Company."

A review of the allegations of the complaint, as well as the circumstances surrounding this litigation, demonstrates that the defendants' motion to dismiss must be denied.

First, the defendants have not satisfied the burden they bear of showing that this action should not be maintained because the named plaintiffs do not "fairly and adequately represent the interests of ... shareholders ... similarly situated in enforcing the right of the corporation...." Fed.R.Civ.P. 23.1. *See Smallwood v. Pearl Brewing Co.*, 489 F.2d 579, 592 n. 15 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113 (1974). The defendants have offered no argument or evidence with regard to the grounds upon which adequacy of representation is generally challenged. The defendants have not asserted, for example, that the named plaintiff shareholders have no knowledge of the facts supporting their claim, lack commitment to the prosecution of this lawsuit, lack competent counsel to assist in the litigation, or have personal conflicts of interest or entanglements making it likely that the interests of other stockholders will be disregarded. *See, e.g., Rothenberg v. Security Management Co.*, 667 F.2d 958 (11th Cir.1982); *Davis v. Comed, Inc.*, 619 F.2d 588 (6th Cir.1980); *Sweet v. Bermingham*, 65 F.R.D. 551 (S.D.N.Y.1975).

■ The defendants' only contention is that the plaintiffs' interests are inimical to those of PSI and its shareholders because prosecution of a lawsuit premised on alleged waste and mismanagement of the defendant officers and directors may be contrary to the position taken by PSI in its defense of the securities class action and the Wabash Valley litigation and in its efforts before the Indiana Public Service Commission to obtain a rate increase. These circumstances do not constitute, however, a showing that the plaintiff shareholders have interests antagonistic to those of similarly situated shareholders. Courts have found inadequacy of representation based on conflict of interest when the shareholder plaintiff had personal entanglements adverse to the interest of the other shareholders. *See, e.g., GA Enterprises, Inc. v. Leisure Living Communities, Inc.*, 66 F.R.D. 123 (D.Mass.1974), *aff'd*, 517 F.2d 24 (1st Cir.1975). The defendants have cited no such personal entanglements on the part of the plaintiffs giving rise to a conflict of interest. At most, the argument of the defendants in this case is a mere assertion that PSI and its shareholders will benefit more from a favorable outcome in the other proceedings than they would from a recovery against the defendant officers and directors in this case. Even assuming (which, of course, this court cannot) that dismissal of this action would result in a favorable outcome for PSI in the other proceedings, the court has no evidence before it to substantiate the defendants' argument.

---

**1.** The class action, *In re* Public Service Company of Indiana Securities Litigation, Cause No. IP 84–26–C, is based on alleged violation of federal securities laws by PSI, and Wabash Valley Power Association, Inc. v. Public Service Company of Indiana, Inc., Cause No. IP 84–252–C, alleges fraud and mismanagement by PSI leading to Wabash Valley's loss of its investment in the Marble Hill project.

The defendants also have submitted literature disseminated on behalf of a group of certain PSI shareholders, "Public Service Indiana Investors." This group intervened in the rate proceeding with the objective of ensuring that PSI's shareholders be protected, in part, by PSI's obtaining a rate increase before the Indiana Public Service Commission. *See* Appendix C of Defendants' Reply Memorandum filed October 16, 1985. The author of the literature, Mr. John C. Carvey, expresses no definite view regarding support for the securities fraud class action or this shareholders derivative suit. *See* PSII Report of November 1, 1984, Appendix C, *supra*. In any event, this literature is completely insufficient to demonstrate that the interests of the derivative plaintiffs are antagonistic to those of PSI shareholders generally. *Compare Kuzmickey v. Dunmore Corp.*, 420 F.Supp. 226 (E.D.Pa.1979) (in which the court found a plaintiff who owned sixteen percent of the corporation's stock to be an inadequate representative when the *entire remainder* of the stock was owned by the individual defendants and other shareholders who objected to the plaintiff's lawsuit).[2]

The defendants have asked the court, in essence, to find that *no* shareholder could be an adequate representative. The reach of rule 23.1's requirement of an adequate shareholder representative has never been extended that far[3] and this court is of the view that such an extension would be inconsistent with the thrust of the rule and the intent of its drafters. *See In re Public Service Company of New Hampshire*, 616 F.Supp. 1342, 1350 (D.N.H.1985) (refusing to find, in a similar case, inadequate representation based on litigation's effect on other actions).

■ The court also cannot accept the defendants' second argument that this ac-

tion should be dismissed as premature. They argue that the plaintiffs' claim is, in essence, an action for indemnification. In other words, the plaintiffs seek to recover on behalf of PSI for the losses of PSI resulting from the alleged mismanagement of the defendant officers and directors. The lion's share of these (potential and realized) losses is attributable to the three proceedings already described: the securities fraud class action, the Wabash Valley litigation, and the amounts expended by PSI for Marble Hill that may not be recovered through a rate increase. The defendants contend that the plaintiffs' claims for indemnification are contingent on the outcome of these proceedings and that because PSI has not yet suffered such losses, the plaintiffs' claims have not yet accrued.

The defendants' argument is faulty for at least two reasons. First, PSI has already incurred a loss estimated at 2.7 billion dollars as a result of the rate proceeding before the Public Service Commission of Indiana. Pursuant to an agreement signed January 31, 1986, by PSI, the Public Service Commission of Indiana, and the Utility Consumer Counselor (representing the public), PSI agreed to "write off on its books of account the retail portion of its abandoned Marble Hill costs (net of salvage) as of December 31, 1985," and also agreed that it would "not seek in any current or future proceeding before the Commission to amortize or otherwise recover its investment in Marble Hill...." In return, PSI would receive a "temporary emergency surcharge increase in retail rates." *See* Agreement attached as Exhibit A to "Third Supplemental Memorandum of Laws of Derivative Plaintiffs in Opposition to Defendants' Motion to Dismiss or Stay."

This agreement therefore renders moot the defendants' argument that the plaintiffs' claims are contingent on losses that

---

**2.** Because the court does not rely on these submissions by the defendants, it need not address the plaintiffs' objection that the submissions should be excluded as matters outside the pleadings.

**3.** In the unpublished decision submitted by the defendants, *Richardson v. Graves*, No. 6617

(Del.Ch. June 17, 1983), the judge included a "final comment" to the effect that the shareholders derivative suit could have a dramatic influence on other lawsuits. The court dismissed the lawsuit, however, on the ground that the shareholders had failed to satisfy the demand requirement of Fed.R.Civ.P. 23.1.

have not yet been incurred by PSI. PSI resists this conclusion by suggesting cryptically in a footnote that the settlement of the rate proceeding accomplished by the agreement could be disapproved as a result of issues raised in a pending appeal or as a result of objections to the settlement raised by intervenors. Disapproval of the settlement would then relieve PSI of its agreement not to seek recovery of its Marble Hill losses through a rate increase proceeding. Although the defendants have not benefitted the court with a thorough explanation of the possibility of disapproval of the settlement, the court finds that such a contingency, if it indeed still exists,[4] does not obviate the fact that PSI has already incurred losses by virtue of its present inability to recover all of its Marble Hill losses through a rate increase.

Second, the plaintiffs' complaint alleges damages to PSI beyond those attributable to proceedings not yet concluded. The existence of such damages is not contingent on the outcome of the pending lawsuits. For example, the plaintiffs allege damages for PSI's expenditures for legal and other professional fees, its loss of present and future business opportunities, its increased interest expense, its difficulty in obtaining credit and raising funds via issuance of public securities, and the harm to its business reputation and standing in the community. *See* Verified Amended Derivative Complaint, ¶ 80.

For these reasons, the plaintiffs' complaint is not subject to dismissal, as it clearly and presently states a claim for which relief can be granted.

The defendants also urge that the grounds asserted for dismissal warrant, in the alternative, a stay of this action. The defendants maintain that such authority to impose a stay is implicit in Fed.R.Civ.P. 23.1 as part of the court's power to provide for the conduct of proceedings in a derivative action. *See* Advisory Committee Note to Rule 23.1. Furthermore, the defendants claim that a stay would avert the risks this

litigation poses to PSI in its defense of the securities fraud class action and the Wabash Valley litigation and in its efforts to obtain a rate increase. Finally, the defendants contend that "the possibility of needless repetition of legal proceedings and unnecessary expenditures of time and money by the Company" could be avoided with a stay of the action at this stage.

■ The court agrees that it has the inherent power to stay proceedings in the interest of economy for itself, counsel, or the litigants. Imposition of a stay is also within the sound discretion of the trial court. *See, e.g., Amdur v. Lizars,* 372 F.2d 103 (4th Cir.1967). The court does not agree, however, that a stay of this action would serve those interests. First, this court has already exercised its authority pursuant to rule 23.1 in determining the conduct of the proceedings by consolidating discovery in this and the other related litigations. A stay of only the derivative action would run contrary to the objective of an orderly, coordinated progression of discovery in all of these cases.

Second, the defendants' contention that the continued prosecution of this action will prejudice PSI in the rate proceedings is without merit because, as noted above, PSI has already resolved that matter through settlement.

Third, the defendants have said they would nevertheless permit limited discovery "[t]o the extent that allegations in the derivative suit are coextensive with those in the securities and Wabash actions." This concession tends to undermine, it seems, the defendants' contention in other portions of their briefs that the focus of this litigation is so similar to the other actions that the prosecution of this action would prejudice PSI's efforts in the other lawsuits. In other words, if discovery in this action reaches far beyond the bounds of discovery in the other actions, that suggests that the inter-relatedness of

**4.** The parties have also not provided the court updated information with regard to the finality

of the settlement.

this litigation with the others is not so compelling as the defendants assert.[5]

Finally, the defendants have not satisfied the court that a stay of this action pending the outcome of the other cases would avoid needless repetition of legal proceedings. As the defendants seem to recognize, this derivative action is not a mere reiteration of the claims asserted in the other litigations. The defendants' argument assumes, however, that all the matters at issue in this derivative action will be resolved in the securities class action and the Wabash Valley litigation, an assumption the validity of which has not been demonstrated. Furthermore, the defendants have not supported their argument with any concrete examples of the "needless repetition" that would occur, particularly in the discovery stages of these cases.

It appears that the resolution of the securities and Wabash Valley cases in favor of PSI would serve primarily to limit the damages recoverable in the derivative suit; it would not eliminate, however, the plaintiffs' cause of action as a matter of law, and such a possibility does not justify a stay at this stage of the proceedings. Because resolution of the other actions will obviously affect the measure of damages at issue in the derivative suit, the court does not rule out the possibility of a continuance of this action at some later point prior to trial.

For all of these reasons, the defendants' motion to dismiss or stay the action, filed May 14, 1985, is DENIED.

On December 2, 1986, the defendant PSI again moved to stay this action on the basis of a recently enacted chapter of the Indiana Code (Ind.Code 23–1–32), part of Indiana's new Business Corporation Law. That chapter provides for the formation of a special litigation committee by the board of directors of a company to investigate the claims and determine whether pursuit of a shareholders derivative suit is in the best interests of the corporation. Ind.Code § 23–1–32–4. PSI explains that PSI's Board of Directors has appointed a special litigation committee pursuant to that provision and further points out that the new law provides that a court may stay a derivative proceeding until the committee has completed its investigation. Ind.Code § 23–1–32–2. PSI therefore asks the court to impose a stay of this action until its special litigation committee can complete its investigation of the claims encompassed in the derivative suit.

The parties have focused most of the arguments in their briefs on the question of whether the statutes described above are applicable in this action. The statutes are part of Indiana's new Business Corporation Law, which was enacted in April of 1986. The new law provides that it generally becomes applicable to Indiana corporations August 1, 1987. The new Business Corporation Law also provides that a corporation may elect that the law apply to itself as of April 1, 1986, so long as certain procedures are followed. PSI has demonstrated that it has complied with these procedures and is presently operating under the provisions of the new Business Corporation Law which, it argues, provide the authority for the role of the special litigation committee in this lawsuit. The plaintiffs argue, on the other hand, that application of these statutes is prospective only, and that because this litigation was commenced in 1984, provisions of the Indiana Code that became effective, at the earliest, in April of 1986 do not govern this action.

■ The court need not, and will not, resolve the prospective/retroactive application dispute at this time. First, even assuming the new law's application to this lawsuit, the statute provides that the court

---

**5.** It seems, in fact, that the defendants take differing views of this litigation depending on the particular argument they advance. For example, in maintaining that the derivative action should be dismissed because it will be damaging to the company's position in other lawsuits, the defendants emphasize the commonality of issues among the lawsuits; however, in seeking a stay of this action for the purported purpose of avoiding discovery that would not otherwise be taken in the securities and Wabash Valley cases, the defendants characterize the lawsuits (and the discovery sought pursuant thereto) as markedly different. This chameleon-like approach weakens both arguments.

*may stay* any proceeding until the investigation is completed. For the reasons this court has already cited, a stay of the proceedings at this stage would not serve the economies of time and effort for the court or the litigants. Furthermore, PSI has not demonstrated that the efforts of the special litigation committee will be hampered by the continued progression of discovery in these related lawsuits. Indeed, the consolidated discovery that will occur in all of these actions, regardless of a stay in this case, could benefit the committee in conducting its investigation.

PSI's concern seems to be that continued discovery in this action will divert its resources from investigation of the derivative claims because numerous depositions of PSI officials will proceed at the same time the committee is conducting its investigation. However, these depositions will be taken, regardless of a stay, as part of the securities class action and Wabash Valley litigation. The defendants have not shown the court that a stay of this action only would significantly reduce the claimed "drain" on the company's resources. A stay of discovery in this suit, followed by a repetition of all these depositions and document acquisitions at a later date if this suit proceeds, poses a more significant risk than pursuit of some discovery unique to this case that could later be determined unwarranted. (Again, the defendants have cited no concrete examples of such unique matters.)

The court also declines to rule on the prospective/retroactive dispute at this time because the matter is not properly before the court. The purported authority of the special litigation committee pursuant to Ind.Code § 23–1–32–4 has not yet been asserted in this case. That authority, as set out in the statute is to determine

(1) Whether the corporation has a legal or equitable right or remedy; and

(2) Whether it is in the best interests of the corporation to pursue that right or remedy, if any, or to dismiss a proceeding that seeks to assert that right or remedy on behalf of the corporation.

Because the committee has not even completed its investigation, and no determination of the committee has been asserted in this case, the issue raised by the defendants does not yet present a justiciable controversy.

In sum, the court finds that the interest in efficient resolution of this lawsuit is best served by allowing discovery to proceed. PSI's motion of December 2, 1986, to stay this action is therefore DENIED.

As a final matter, the court *sua sponte* directs the parties to brief the issue raised in footnote four of the plaintiffs' "Rebuttal Memorandum in Opposition to Defendants' Second Motion to Stay Derivative Action" with regard to the dual representation by counsel of PSI and some of its defendant officers and directors. The plaintiffs' brief shall be filed on or before July 22, 1987, with the defendants' response fifteen (15) days thereafter.