**Richard E. RIGGIN, Individually and as a Shareholder of Rea Riggin & Sons, Inc., Appellant–Plaintiff,**

v.

**REA RIGGIN & SONS, INC., Joann Riggin, John W. Riggin, Joetta Riggin, Sherry Riggin, Carl Riggin, Lloyd Riggin, and Herb Shideler, Appellees–Defendants.**

No. 18A02–9909–CV–679.

Court of Appeals of Indiana.

Nov. 14, 2000.

Russell T. Clarke, Jr., Emswiller, Williams, Noland & Clarke, Indianapolis, Indiana, Attorney for Appellant.

Jodie L. Ferise, Dennis Wenger & Abrell, Muncie, Indiana, Attorney for Appellees.

## OPINION

SULLIVAN, Judge

Appellant, Richard Riggin (Richard), challenges the trial court's grant of summary judgment in favor of appellees Rea Riggin and Sons, Inc., JoAnn Riggin, John W. Riggin, Joetta Riggin, Sherry Riggin, Carl Riggin, Lloyd Riggin, and Herb Shideler (the Corporation). Richard also challenges the trial court's order that he pay the expenses of deposed witnesses and finding him in contempt when he failed to

do so. He also challenges the trial court's denial of his motion for a continuance.

We affirm in part, reverse in part and remand.

The record reveals that Rea Riggin and Sons was founded by Rea and Nellie Riggin and their sons in 1927, and that the board of directors has always consisted of members of the Riggin family. At the time the motion for summary judgment was filed, Appellees JoAnn Riggin, John W. Riggin, Sherry Riggin, and Herb Shideler were members of the board of directors.[1] Rea Riggin and Sons has twenty-nine shareholders and 1149.53 shares outstanding. Richard Riggin owns 77.626 shares of the corporation.

On January 2, 1997, Richard Riggin filed a direct action and a shareholder derivative action against the Corporation. This complaint alleged breach of fiduciary duty, fraud, constructive fraud, unjust enrichment, and negligence, and requested an accounting and an inspection of corporate records. Subsequently, Richard filed a request to depose Merrill Greene, the Corporation's accountant. In response, on May 22, 1998, the Corporation filed a motion for a protective order regarding Richard's request. After a hearing on the protective order motion, the trial court ordered Richard to pay the expenses of Merrill Greene as a condition of allowing the deposition. Richard deposed Mr. Greene, but failed to pay the expenses. As a result, the Corporation filed a petition to find Richard in contempt.

On October 28, 1998, Arthur Robinson requested permission from the trial court to withdraw as Richard's attorney. In support of his request to withdraw, Mr. Robinson stated that he had become aware that he could be called as a witness at the contempt hearing, and Richard had requested he withdraw. Additionally, Mr. Robinson stated Richard was securing new representation. The trial court denied this

motion. During the contempt hearing on October 30, 1998, Tom Brown entered his appearance as Richard's counsel. Also at the hearing, Mr. Robinson moved twice in open court for permission to withdraw as Richard's counsel. On the last motion, the court allowed Mr. Robinson to withdraw. Thereafter, Richard was found in contempt and remanded into the custody of the Delaware County Sheriff until he purged himself of contempt by paying Mr. Greene's expenses. The court then set a trial date of July 14, 1999.

On January 20, 1999, Mr. Brown filed a motion requesting permission to withdraw as Richard's attorney. This motion read in part: "this attorney only appeared in the case originally for a brief one hour segment to assist the attorney of record. That this attorney is not familiar with the case and does not have time available to adequately represent [Richard]. That no fee arrangement was made for full representation." Record at 370. The trial court initially denied Mr. Brown's motion, but later, on a motion to reconsider, granted him permission to withdraw.

On February 18, 1999, Richard informed the trial court that he was in the process of securing counsel. On May 28, 1999, Richard again informed the trial court that he would be obtaining an attorney. Still proceeding without legal counsel, Richard filed a motion for a continuance on June 3, 1999. This motion was denied, and on June 10, 1999, Richard filed a motion to reconsider which was also denied.

On June 8, 1999, the Corporation moved for summary judgment, and Richard filed a memorandum in opposition. Both sides designated evidence for the trial court to consider. On June 30, 1999, Richard informed the trial court that he had been unable to secure legal representation. A hearing on the motion for summary judgment was held on July 9, 1999. After the hearing, the trial court ordered summary

---

1. Richard's brother Donald, also a member of the board of directors of Rea Riggin and

Sons, was not a named defendant in the action.

judgment in favor of all defendants on all counts.

### I. Summary Judgment on the Derivative Claims

Upon appeal, Richard contends that granting summary judgment in favor of the Corporation was error for several reasons. First, Richard claims that the trial court failed to follow the time limitations set forth in Ind. Trial Rule 56(C). Next, Richard claims the trial court improperly placed upon him the burden of proving he met the requirements of Ind. Trial Rule 23.1. He further claims the trial court erred by considering certain evidence the Corporation designated in support of its motion for summary judgment. Finally, Richard claims the trial court used an improper legal test in determining that he did not meet the requirements of T.R. 23.1.

### A. Time Limits of Rule 56(C)

■ Richard first claims that the trial court erred by failing to comply with T.R. 56(C), which states in part, "The court shall conduct a hearing on the motion which shall be held not less than ten (10) days after the time for filing the response." Richard filed his response to the Corporation's motion for summary judgment on July 8, 1999. The hearing on the motion for summary judgment was held the next day.

■ In claiming that this was erroneous, Richard relies on *Otte v. Tessman* (1981), Ind., 426 N.E.2d 660. In *Otte,* our Supreme Court held that prejudice was presumed when a trial court failed to follow the time limits as set forth in the Trial Rules. *Id.* at 661. However, *Otte* was decided prior to the adoption of subsection 56(I) which provides that "[t]he Court, for cause found, may alter any time limit set forth in this rule." Richard acknowledges that T.R. 56(I) allows the trial court, for

good cause, to alter the time limits set forth in T.R. 56. However, he contends that the rule presumes a party will request an alteration of the time limits. Support for such a contention cannot be found in the text of the rule. T.R. 56(I) does not require a motion by a party before the court may act. The rule simply states that the trial court may, for good cause, alter any time limit contained in the rule. T.R. 56(I). As trial in this case was set to begin in five days, we cannot say that the trial court did not have good cause to hold the hearing the day after Richard filed his response in opposition to the motion for summary judgment.[2]

### B. Improper Burden of Proof

■ Next, Richard claims that the trial court erred when it placed upon him the burden of proving that he met the requirements for bringing a shareholder derivative action. Trial Rule 23.1 governs shareholder derivative actions and reads in part, "[t]he derivative action may not be maintained if it appears that the plaintiff does not *fairly and adequately represent the interests of the shareholders or members similarly situated* in enforcing the right of the corporation or association." T.R. 23.1 (emphasis added). In its Order of Summary Judgment, the trial court stated, "Richard E. Riggin ... has not met his burden of proof to show that he fairly and adequately represents the class of shareholders on whose behalf his actions must necessarily be." Record at 647.

Although T.R. 23.1 does not specifically state which party bears the burden, nor has any Indiana court ever decided this issue, federal courts interpreting F.R.C.P. 23.1 have held that the burden should rest with the defendant to show that the plaintiff is not a fair and adequate representative. *Smallwood v. Pearl Brewing Co.* (1974), 5th Cir., 489 F.2d 579, 592, *cert.*

---

**2.** Even if it were error for the trial court to have shortened the time between the filing of Richard's response and the hearing, it is the Corporation which would have been harmed. It was the Corporation which had but one day to prepare for the hearing after Richard filed his response.

*denied* (1974), 419 U.S. 873, 95 S.Ct. 134, 42 L.Ed.2d 113; *Guenther v. Pacific Telecom, Inc.* (1988), D.C.Or., 123 F.R.D. 341, 344; *Abeloff v. Barth* (1988), D.C.Mass., 119 F.R.D. 332, 335. Due to the similarity between T.R. 23.1 and the corresponding Federal Rule, we will utilize federal law in interpreting T.R. 23.1. *See Bowen v. Sonnenburg* (1980), Ind.App., 411 N.E.2d 390, 397.

The Corporation nevertheless insists that, in shareholder derivative actions, we should place upon the plaintiff the burden of showing whether he or she will be a fair and adequate representative of similarly situated shareholders. In support of this proposition, the Corporation cites *Kaufmann v. Credithrift Financial, Inc.* (1984), Ind.App., 465 N.E.2d 207. In *Kaufmann,* this court noted that in class actions brought pursuant to T.R. 23, "[t]he burden of proof that the class will be fairly and adequately represented rests with the plaintiff." *Id.* at 209. While acknowledging that T.R. 23 does not govern shareholder derivative actions, the Corporation nevertheless states that "no logical reason has been set forth for distinguishing between [class actions and shareholder derivative actions] with regard to burden of proof." Appellee's Brief at 21. We disagree. A careful comparison of Trial Rules 23 and 23.1 reveals substantial differences between the two.

■ In a class action, the trial court is required to hold a hearing before the action may be maintained. *Bowen v. Sonnenburg, supra,* 411 N.E.2d at 401; T.R. 23(C)(1). Rule 23 states in part, "One or more members of a class may sue ... as representative parties on behalf of all *only if* ... the representative parties will fairly and adequately protect the interests of the class." (Burns Code Ed.2000). The requirement is a condition of the right to sue. Thus, because a hearing is required, it stands to reason that the plaintiff must demonstrate that he or she will be an adequate representative.

In contrast, the relevant portion of T.R. 23.1 reads, "The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the rights of the corporation or association." (Burns Code Ed.2000). Unlike T.R. 23, T.R. 23.1 does not state that the plaintiff may sue only if he or she is an adequate representative. Instead, it contemplates that the action may be dismissed *if* it appears the plaintiff is not an adequate representative. Interpreting Federal Rule of Civil Procedure 23.1, the Second Circuit noted:

> "Although the district court is thus empowered to dismiss a derivative action should it appear that the plaintiff does not adequately represent the shareholders in enforcing the rights of the corporation, a finding in the alternative is not required before a derivative action may go forward. The burden is on the defendants to obtain a finding of inadequate representation."

*Smallwood, supra,* 489 F.2d at 592, n. 15. Therefore, we hold that in derivative actions arising under T.R. 23.1, the burden is upon the defendant to establish that the plaintiff is not a fair and adequate representative of the similarly situated shareholders.

Furthermore, this case is not before us on appeal from a Rule 23 hearing; it is instead an appeal from an order of summary judgment. Pursuant to T.R. 56, summary judgment is appropriate only where the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. T.R. 56(C); *Jones v. Western Reserve Group/Lightning Rod Mut. Ins. Co.* (1998), Ind.App., 699 N.E.2d 711, 713, *trans. denied.* As the moving party, the burden was upon the Corporation to establish, prima facie, that no genuine issues of material fact existed and that it was entitled to judgment as a matter of law. *Id.* Only

after the moving party has met its burden is the non-moving party required to set forth specific facts demonstrating a genuine issue for trial. *Id.* Placing the burden on the non-moving party, as the Corporation suggests, therefore would also contradict Indiana law regarding summary judgment. Because the Corporation moved for summary judgment, the burden was on it to show that, prima facie, no genuine issues of material fact existed and that it was entitled to judgment as a matter of law.

### C. Improper Legal Standard

Having concluded that the Corporation bore the burden of proof on the issue of whether or not Richard met the requirements of T.R. 23.1, we must now determine whether the trial court's consideration of the issue was proper. In its order of summary judgment, the trial court determined that Richard did not "fairly and adequately [represent] the class of shareholders on whose behalf his actions must necessarily be." Record at 647. The trial court noted that "[t]here is no dispute as to the fact that there are 29 shareholders in this corporation, all of whom are similarly situated to the Plaintiff, Richard E. Riggin." Record at 645. The order further stated:

"6. There is no dispute as to the fact that 20 of the 29 shareholders in this Corporation, representing 82 percent of the outstanding shares of stock, indicated by way of their Affidavits that they did not believe Richard E. Riggin fairly and adequately represented their interests.

7. There is no dispute that the only shareholders who did indicate Richard E. Riggin fairly and adequately repre-

sented their interests were those who were in his immediate family (his family or that of his brother, Donald).

8. There are 28 shareholders besides Richard E. Riggin who could maintain an action exactly like the one at bar. Even excluding the 6 named Defendants who are shareholders, there are 22 shareholders who could bring this action but have not.

9. Richard E. Riggin has the burden of proof to show that he does fairly and adequately represent the class of shareholders on whose behalf he purports to act."

Record at 646–47. Richard argues that the trial court used an improper legal test to determine whether or not he met the requirement of T.R. 23.1 regarding fair and adequate representation of similarly situated shareholders. Richard also contends that the trial court erred in granting summary judgment in favor of the Corporation because, using his proposed analysis of Rule 23.1, there was a genuine issue of material fact as to whether or not he could fairly and adequately represent the interests of similarly situated shareholders.

To answer this question, we must first determine who the similarly situated shareholders are, and then determine whether those shareholders were being fairly and adequately represented. The trial court had little guidance in deciding this issue. To our knowledge, no Indiana case has ever addressed the matter. Thus, the question of how to determine whether a plaintiff fairly and adequately represents the interests of similarly situated shareholders is one of first impression in Indiana. Because of the similarity between Rule 23.1[3] and Federal Rule of Civil

---

**3.** "In a derivative action brought by one or more shareholders or members or holders of an interest in such shares or membership, legal or equitable, to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege that the plaintiff was a shareholder or member or holder of an interest, legal or equitable, in such shares or membership at the time of the transaction or any part thereof of which he complains or that his share or membership thereafter devolved on him by operation of law, and the complaint shall also allege with particularity the efforts, if any, made by the plaintiff, to obtain the action he desires from the directors or com-

Procedure 23.1,[4] we may look to federal law for guidance to determine who makes up the class of similarly situated shareholders and determine whether the plaintiff fairly and adequately represents this class of shareholders. *See Kaufmann, supra,* 465 N.E.2d at 209.

### 1. Similarly Situated Shareholders

The Corporation argues that, because shareholder derivative actions are brought on behalf of the corporate entity, "shareholders similarly situated" means all shareholders. In contrast, Richard argues that he represents only the group of shareholders represented by himself, his brother, and their immediate families. Therefore, according to Richard, the trial court should have determined whether he fairly and adequately represented the interests of only those who indicated their support for him. To determine who is a similarly situated shareholder, we turn to federal law for guidance. *See Kaufmann,* 465 N.E.2d at 209.

■ Generally, derivative actions are pursued by minority shareholders. 7C

CHARLES ALAN WRIGHT, ARTHUR R. MILLER, AND MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE, § 1833 at 138 (2d ed.1986); *See also Halsted Video, Inc. v. Guttillo* (1987), N.D.Ill., 115 F.R.D. 177 (holding that derivative actions do not require the support of a majority of shareholders or even all of the minority shareholders). "If the majority shareholders desire to pursue a cause of action, there is generally no need for a derivative suit. The majority through their control of the board could cause the suit to be brought directly." Mary Elizabeth Matthews, *Derivative Suits and the Similarly Situated Shareholder Requirement,* 8 DEPAUL BUS. L.J. 1, 12–13 (1995). Therefore, the derivative plaintiff usually represents only a minority of shareholders. If the derivative plaintiff were required to represent the majority of shareholders "it could result in a dismissal of virtually all derivative suits." WRIGHT ET AL., *supra* at 138. Thus, we reject the Corporation's suggestion that a derivative plaintiff must fairly and adequately represent all shareholders.[5]

---

parable authority and the reasons for his failure to obtain the action or for not making the effort. *The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.* The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs." T.R. 23.1 (Burns Code Ed.2000) (emphasis supplied).

4. "In a derivative action brought by one or more shareholders or members to enforce a right of a corporation or of an unincorporated association, the corporation or association having failed to enforce a right which may properly be asserted by it, the complaint shall be verified and shall allege (1) that the plaintiff was a shareholder or member at the time of the transaction of which the plaintiff complains or that the plaintiff's share or membership thereafter devolved on the plaintiff by operation of law, and (2) that the action is not a collusive one to confer jurisdiction on a court of the United States which it would not

otherwise have. The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action the plaintiff desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for the plaintiff's failure to obtain the action or for not making the effort. *The derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association.* The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs." FED. R.CIV.P. 23.1. (emphasis supplied).

5. The Corporation argues that all of the shareholders of Rea Riggin and Sons are "minority shareholders" in that no one shareholder owns a majority of the stock. It claims that even if Richard is required to represent only the "minority" shareholders, he must represent them all because they are all "minority shareholders." Thus, the Corporation argues that Richard is attempting to

Were we to adopt the approach suggested by Richard, the result would also be illogical. To define the class of those similarly situated as consisting of only those supporting the suit would deprive the requirement that the plaintiff fairly and adequately represent similarly situated shareholders of much of its meaning. Shareholders expressing doubts about the plaintiff's ability to represent them, even if they are similarly situated with the plaintiff in the sense that they wish to redress a corporate injury, would be excluded from the action.

Federal courts have considered three factors in determining the group of shareholders a derivative plaintiff must represent. Matthews, *supra*, 8 DePaul Bus. L.J. at 23. The first of these factors is whether or not a shareholder is a named defendant. *Id.* To require the plaintiff to adequately represent those against whom he or she is bringing the action is illogical.[6] Defendant shareholders will almost certainly be opposed to the relief sought by a derivative plaintiff. Therefore, we hold that if a shareholder is also a named defendant in the action, he or she should be excluded from the class of shareholders the plaintiff is required to fairly and adequately represent.

The second factor considered by many federal courts in resolving the similarly situated requirement is the support or opposition of the other shareholders. Matthews, *supra*, 8 DePaul Bus. L.J. at 24. However, to allow support for the plaintiff to determine who the plaintiff must represent could rob T.R. 23.1 of much of its meaning. As acknowledged by

the court in *Larson v. Dumke* (1990), 9th Cir., 900 F.2d 1363, 1368, *cert. denied* (1990), 498 U.S. 1012, 111 S.Ct. 580, 112 L.Ed.2d 585, "The degree of support a putative plaintiff receives from other shareholders ... is a factor that should be considered in determining *adequacy of representation.*" (emphasis added). Thus, the degree of support a plaintiff receives from other shareholders should not be used to determine which shareholders the plaintiff must represent; instead it should be considered in determining the adequacy of representation once the similarly situated shareholders have been identified.

The final factor considered by federal courts in determining the class of similarly situated shareholders is the degree of personal or economic conflict between the plaintiff and the other shareholders. Matthews, *supra*, 8 DePaul Bus. L.J. at 25. This factor has apparently been carried over from the determination of adequacy of representation in class actions. Wright et al., *supra* at 133. However, as Professor Matthews has pointed out, unlike a class action, a derivative action involves three parties-the plaintiff, the other shareholders, and the corporation itself. Matthews, *supra* at 26. Comparing only the interests of the plaintiff to those of the remaining shareholders is not sufficient. *Id.* Rather, the interests of all three parties involved should be compared. In many cases, the corporation may be injured, but the remaining shareholders benefit from the corporate injury. See *Larson, supra*, 900 F.2d at 1368–69. In other cases, the corporation may not in fact be injured, but the plaintiff may have inter-

---

create a "minority of a minority." This is sophistry. Were we to use this reasoning, a group of shareholders, none of whom individually owns an outright majority of shares, but who together own a majority of the outstanding shares, could never be challenged by a shareholder derivative suit. Clearly this is not what T.R. 23.1 was meant to do.

**6.** Two of the cases cited by Professor Matthews in support of this idea conflict with each other in result. In *Kuzmickey v. Dun-*

*more Corp.* (1976), E.D.Pa., 420 F.Supp. 226, the court determined that, because the plaintiff was not similarly situated with the remaining shareholders, the majority of whom were named defendants, she could not alone maintain a shareholder derivative action. The court in *Halsted Video, Inc., supra*, 115 F.R.D. at 179, held that, because all of the other shareholders were defendants in the action, the plaintiff could not be required to represent them and allowed the plaintiff to proceed as a "class of one."

ests which conflict with the good of the corporation. *See Vanderbilt v. Geo–Energy Ltd.* (1983), 3rd Cir., 725 F.2d 204; *Davis v. Comed, Inc.* (1980), 6th Cir., 619 F.2d 588. In such cases, a derivative action could be used as leverage to gain an advantage for the plaintiff at the expense of the corporation.

■ Because the derivative action is brought on behalf of the corporation, a more appropriate comparison is whether the plaintiff and the remaining shareholders have conflicting interests with regard to the corporation. *Matthews, supra,* 8 DePaul Bus. L.J. at 27–28. All shareholders have an interest in the corporation. By comparing the shareholders' interests to those of the corporation, we indirectly compare them to each other. Therefore, when determining whether or not other shareholders are similarly situated with the plaintiff:

> "the court should first consider the interests of the remaining shareholders to determine if they are antagonistic to the right asserted by the corporation. If the remaining shareholders have financial or personal concerns which will be injured should the corporation prevail, those shareholders should be classified as dissimilar to the plaintiff in enforcing the right of the corporation. Such shareholders should therefore fall outside the pool of shareholders that the plaintiff must represent."

*Matthews, supra* at 27. Thus, looking at these factors, the trial court should first exclude any shareholders who are named as defendants. Then the trial court should exclude those shareholders with financial or personal interests in conflict with the interests of the corporation. However, any opposition to the derivative action should be considered only in determining the adequacy of the representation, which we now address.

### 2. Fairness and Adequacy of Representation

■ After determining the group of shareholders represented by the plaintiff, the court must then determine whether or not the putative plaintiff fairly and adequately represents the class. Federal case law on this issue is extensive and yields a variety of factors to be considered. We believe the factors set forth in *Larson, supra,* 900 F.2d 1363, to be instructive. In *Larson,* the Ninth Circuit listed several factors, both positive and negative, which federal courts have used to determine the adequacy of representation in a shareholder derivative suit under F.R.C.P. 23.1. *Id.* at 1367. The first factor is an indication that the plaintiff is not a true party in interest. *Id.* The second factor is the plaintiff's lack of familiarity with the suit, and his or her unwillingness or inability to learn about the suit. *Id.* A third factor to consider is the amount of control exercised by any attorney(s) over the suit. *Id.* Fourth, courts should consider the degree of support received by the plaintiff from the other shareholders.[7] *Id.* The fifth factor to consider is the plaintiff's lack of personal commitment to the action. *Id.* at 1367. Sixth, the court should consider the remedy sought by the plaintiff. *Id.* This aids the court in determining whether the plaintiff is seeking to redress a corporate versus a personal injury. The seventh factor, which should be considered in conjunction with the previous factor, measures the relative magnitude of the plaintiff's personal interest in the suit as compared to his interest in the derivative action. *Id.* Thus, we compare the interests of the plaintiff to those of the corporation. "If the plaintiff has individual interests that significantly conflict with those of the corporation, it would be inappropriate for the plaintiff to act as the champion of the corporate cause." *Matthews, supra,* 8 De-

---

**7.** Although not a proper factor to consider when determining the class of shareholders represented, support or opposition of the represented shareholders is a proper factor to consider when determining the fairness and adequacy of representation of the plaintiff. *Id.* at 1368.

PAUL BUS. L.J. at 27. Next, the court should consider any vindictiveness of the plaintiff towards the defendants. *Larson, supra* at 1367. Other courts have recognized that it is also important to consider whether or not the plaintiff is represented by competent counsel. *See Sonkin v. Barker* (1987), S.D.Ind., 670 F.Supp. 249, 251. After careful consideration, we hold that Indiana courts should consider these factors to determine whether or not a plaintiff fairly and adequately represents the interests of similarly situated shareholders.[8]

 In doing so, trial courts should not rely on any one factor to the exclusion of others. As the court in *Larson, supra,* 900 F.2d at 1368, recognized, "[t]hese factors are 'intertwined or interrelated, and it is frequently a combination of factors which leads a court to conclude that the plaintiff does not fulfill the requirements of [F.R.C.P.] 23.1.'" (quoting *Davis, supra,* 619 F.2d at 593–94). Only if the court determines that the plaintiff does fairly and adequately represent the interests of similarly situated shareholders may the derivative plaintiff proceed in the action.

 Having set forth the proper standard under T.R. 23.1, we must now determine, based on the designated evidence, whether the Corporation carried its burden of showing that it was entitled to summary judgment. On appeal from a grant of summary judgment, we stand in the shoes of the trial court. *Pohle v. Cheatham* (2000), Ind.App., 724 N.E.2d 655, 658. We do not weigh the designated evidence, but, rather, we view such evidence in the light most favorable to the non-moving party. *Id.* We may sustain a grant of summary judgment upon any theory supported by the designated materials and are not bound by the trial court's findings. *Id.* We must resolve any disputed fact or inference of fact in favor of the non-moving party. *Jones, supra,* 699

N.E.2d at 713. The appealing party must establish the existence of a genuine issue of material fact from the evidence designated to the trial court. *Id.* If facts which would dispose of the litigation are in dispute, there are genuine issues of material fact. *Id.* at 713–714. Summary judgment may not be entered where conflicting inferences arise from the undisputed facts and is inappropriate even if the trial court believes that the non-moving party will not prevail at trial. *Id.* at 714. Before we may address the propriety of summary judgment, however, we must address Richard's claims regarding the designated evidence.

### D. Designated Evidence

 Richard contends that the trial court erred when it relied upon the designated affidavits of the other shareholders to determine whether Richard met the requirements of Rule 23.1. Richard claims the affidavits submitted by the Corporation were conclusory and, therefore, inappropriate.

 Affidavits submitted in support of a motion for summary judgment must contain facts which would be admissible in evidence. *Thomsen v. Musall* (1999), Ind. App., 713 N.E.2d 900, 900, *trans. denied.* "'Mere assertions of conclusions of law or opinions in an affidavit will not suffice.'" *Id.* (quoting *Comfax Corp. v. North American Van Lines, Inc.* (1994), Ind.App., 638 N.E.2d 476, 481).

The affidavits designated by the Corporation were obtained from shareholders of Rea Riggin and Sons and were all in substantially the same form. They contained factual information about each shareholder, including his or her name, the amount of shares owned, and his or her relationship to Richard. The affidavits then stated that the affiant had "personal knowledge of the facts and opinions contained

---

8. These factors are not necessarily the only factors appropriate to be considered. There may be other factors made apparent in a given situation which are relevant to the determination.

within this affidavit." Record at 391–411. Below this, the affidavits read:

"As a shareholder in this corporation, it is my belief that (initial one):

___ A. Richard Riggin *DOES* fairly and adequately represent my interest as a shareholder in this corporation.

___ B. Richard Riggin *DOES NOT* fairly and adequately represent my interest as a shareholder in this corporation."

Record at 391–411.

In all but one of the twenty-one affidavits designated by the Corporation, the affiants indicated that they believed that Richard did not fairly and adequately represent their interests as shareholders. The four affidavits designated by Richard were either identical or substantially similar to the ones designated by the Corporation with the exception that the four affiants indicated that they believed Richard did fairly and adequately represent their interests as shareholders. Thus, five shareholders indicated support and twenty shareholders indicated opposition to Richard as a derivative plaintiff. Based upon these materials, the trial court determined that Richard had failed to show that he met the requirements of Rule 23.1 and granted summary judgment in favor of the Corporation.

 These affidavits tell us whether or not the affiants *believed* Richard met the requirements of Rule 23.1. However, the ultimate issue of whether or not Richard met the requirements of Rule 23.1 was a matter for the trial court to determine based upon the designated evidence. Therefore, these affidavits are conclusory and do not alone determine the question of whether or not Richard met the requirements of Rule 23.1. Nonetheless, the affidavits are indicative of support or opposition, and for this reason contain properly designated information.[9]

 Richard also contends that the trial court erred when it considered improperly designated evidence indicating that he had been diagnosed with paranoia. As a general rule, designating pleadings, discovery materials, and affidavits in their entirety fails to meet the specificity requirements of T.R. 56(C). *Abbott v. Bates* (1996), Ind.App., 670 N.E.2d 916, 922. However, the designation will not fail for lack of specificity if a more detailed reference is provided in accompanying memoranda. *Id.* Thus, a party in an accompanying memorandum may designate an affidavit either by providing specific page numbers and paragraph citations, or by specifically referring to the substantive assertions relied upon. *Id.* This was not done in the present case. Both parties did designate "all the pleadings," and Richard's motion to reconsider his motion for continuance did make reference to Richard's paranoid disorder. However, this document was never specifically designated by either party for the court to consider in deciding whether or not to grant summary judgment. There was no reference to the motion to reconsider in the accompanying memoranda, nor did the parties specifically refer to the assertion that Richard suffers from paranoia. Therefore, it was improper for the trial court to consider Richard's mental condition on the motion for summary judgment. Neither the trial court nor this court on appeal may look beyond the evi-

9. We also note that, at the hearing on summary judgment, Richard made no objection to the challenged affidavits. A party who contends that an affidavit is defective has a duty to direct this complaint to the attention of the trial court. *LeMaster v. Methodist Hosp. of Indiana, Inc.* (1992), Ind.App., 601 N.E.2d 373, 376. Failure to do so constitutes waiver of the issue on appeal. *Id.* Therefore, Richard has waived any objection and we may consider these affidavits on appeal, whether or not they were conclusory. Richard also admits that the affidavits he designated in opposition of summary judgment suffer from the same alleged problem of being conclusory. The Corporation likewise failed to object to Richard's affidavits. Therefore, we will consider Richard's affidavits in the same manner as we consider the Corporation's affidavits.

dence specifically designated to the trial court.[10] *Plummer v. Board of Com'rs of St. Joseph County* (1995), Ind.App., 653 N.E.2d 519, 521, *trans. denied.*

#### E. Propriety of Summary Judgment

■ To address the propriety of summary judgment, we must first determine which shareholders were similarly situated with Richard. Excluding the named defendants, we are left with twenty-one shareholders. Neither the Corporation nor Richard designated any evidence showing that the remaining shareholders had any personal or economic interests in conflict with the interests of Rea Riggin and Sons.[11] Therefore, the group of similarly situated shareholders consists of the non-defendant shareholders of Rea Riggin and Sons.

We must now determine whether the Corporation's designated evidence establishes, prima facie, that Richard was not a fair and adequate representative of the non-defendant shareholders. As noted above, the Corporation, mistakenly relying on *Kaufmann, supra,* 465 N.E.2d 207, maintains the burden of proof regarding fair and adequate representation lies with Richard. The Corporation designated the affidavits of twenty shareholders indicating lack of support for Richard as plaintiff. Thirteen of these affidavits are from non-defendant shareholders. These thirteen shareholders hold approximately twenty-eight percent of the outstanding shares of Rea Riggin and Sons. In its memorandum in support of summary judgment, the Corporation suggests there may be some conflicting interests between Richard and the remaining shareholders, but there is no designated evidence to support this allegation. Thus, the only designated evidence indicating a lack of fair and adequate representation is the opposition of some shareholders to Richard as plaintiff. This is inadequate to establish, prima facie, that Richard would not fairly and adequately represent the non-defendant shareholders. Therefore, the burden was never placed upon Richard to designate evidence in opposition to summary judgment, and summary judgment in favor of the Corporation was inappropriate.

#### II. Summary Judgment on Direct Claims

■ Richard also contends that the trial court erred when it granted summary judgment on Richard's direct claims in favor of Joetta Riggin, Lloyd Riggin, and Carl Riggin. Richard concedes that Joetta, Lloyd, and Carl were not directors of Rea Riggin and Sons during the period relative to this case. However, Richard notes that, in a closely-held corporation, shareholders stand in a fiduciary relationship to each other. *Barth v. Barth* (1995), Ind., 659 N.E.2d 559, 561. This duty attaches to acts done in the capacity of a director, officer, or shareholder. *Hartung v. Architects Hartung/Odle/Burke, Inc.* (1973), 157 Ind.App. 546, 552, 301 N.E.2d 240, 243. Therefore, Richard argues that it was improper for the trial court to grant summary judgment in favor of these individuals as shareholders because they were in a closely-held corporation.

■ We note that the appellees have failed to respond to this argument in their

---

**10.** In Appellant's Reply Brief, Richard attempts to argue that the Corporation also failed to properly designate the notice given the shareholders regarding the suit. This contention is raised for the first time in Richard's reply brief. Any argument not presented in the original brief is waived and a party may not revive it by arguing the issue in the reply brief. *Meyers v. Langley* (1994), Ind.App., 638 N.E.2d 875, 879.

**11.** In fact, in his memorandum in opposition to summary judgment, Richard stated he believed the remaining shareholders would support him once the facts were fully disclosed. Richard also claimed that the remaining shareholders had inadequate resources to fight for the rights of the corporation. Nowhere in his designated evidence did Richard demonstrate any conflicting interest between the non-defendant shareholders and Rea Riggin and Sons.

Appellee's Brief.[12] An appellee's failure to respond to an issue presented by an appellant allows for reversal upon the appellant's showing of prima facie error on that issue. *Hacker v. Holland* (1991), Ind.App., 575 N.E.2d 675, 676, *trans. denied.* This does not, however, relieve us of our obligation to correctly apply the law to the facts in the record. *Newman v. State* (1999), Ind.App., 719 N.E.2d 832, 838, *trans. denied.*

■■■ Before we may consider whether or not Joetta, Lloyd, or Carl owed any duty to Richard, we must first determine whether or not Rea Riggin and Sons is a closely-held corporation. A closely-held corporation is one which typically has relatively few shareholders and whose shares are not generally traded in the securities market. *W & W Equipment Co., Inc. v. Mink* (1991), Ind.App., 568 N.E.2d 564, 570, *trans. denied.* The designated evidence shows that Rea Riggin and Sons has twenty-nine shareholders, and there is no indication that the shares are traded on the securities market. Construing any inferences of fact in favor of the non-moving party, we conclude that Rea Riggin and Sons is a closely-held corporation. However, this alone is not dispositive.

■■■ Even if the shareholders stand in a fiduciary relationship, a court may disallow a direct action by a shareholder in a closely-held corporation if it finds that such action will (1) unfairly expose the corporation or defendants to a multiplicity of actions, (2) materially prejudice the interests of creditors of the corporation, or (3) interfere with a fair distribution of the recovery among all interested persons. *Barth, supra,* 659 N.E.2d at 562.

As noted above, Rea Riggin and Sons has twenty-one shareholders excluding Richard and the seven defendants. To allow a direct action against a corporation of this size would unfairly expose the corporation to a multiplicity of suits from any of the non-defendant shareholders. Because of this, Richard cannot maintain a direct action against Joetta Riggin, Lloyd Riggin, or Carl Riggin as shareholders. Thus, the trial court properly granted summary judgment on the direct claims.

### III. Expert Witness Fees

■■■ Richard's next assertion is that the trial court erred when it ordered him to pay the deposition expenses of certain witnesses and held him in contempt when he failed to do so. Richard sought to depose Merrill Greene, the accountant for the Corporation. Mr. Greene notified the Corporation that he would need to be paid for the time spent in preparing documents and giving the deposition. Richard refused to pay Mr. Greene. Thereafter, the Corporation petitioned the trial court for a protective order pursuant to Ind. Trial Rule 26(C). After a hearing on the motion, the trial court ordered that Richard "shall pay the expenses of the testimony of the expert witness, Merrill Greene, CPA." Record at 284. Richard contends that Mr. Greene was merely a fact witness, and therefore not entitled to expert witness fees.

■■■ A trial court has broad discretion in ruling upon discovery issues, and we will interfere only where an abuse of discretion is apparent. *Brown v. Dobbs* (1998), Ind.App., 691 N.E.2d 907, 909. An abuse of discretion occurs only where the trial court's decision is against the logic and natural inferences to be drawn from the facts of the case. *Id.* Due to the fact-sensitive nature of discovery matters, a trial court's ruling is cloaked with a strong presumption of correctness on appeal. *Id.*

Richard's argument is that, because he was deposing Mr. Greene as a fact witness, the trial court had no authority under T.R.

---

**12.** In fact, the appellees claim that "Richard does not now appeal the [trial] court's grant of summary judgment on his direct claims." Appellee's Brief at 11. This is not so. Richard specifically argues that Joetta, Lloyd, and Carl owed him a fiduciary duty as a fellow shareholder, and that summary judgment was improperly entered on this direct claim.

26(B)(4)(c)(i) to order him to "pay the expert a reasonable fee for time spent in responding to discovery under subdivision (B)(4)(a)(ii) and (B)(4)(b) of this rule." Subdivision (B)(4)(a)(ii) refers to the discovery of facts known or opinions held by experts acquired or developed in anticipation of litigation or for trial. Subdivision (B)(4)(b) deals with experts who have been "retained or specifically employed by another party in anticipation of litigation or preparation for trial and who [are] not expected to be called as [witnesses] at trial." T.R. 26(B)(4)(b).

■ Because our Rule 26 was adopted from the Federal Rules of Civil Procedure, federal authorities are relevant to our discussion. *See American Bldgs. Co. v. Kokomo Grain Co., Inc.* (1987), Ind.App., 506 N.E.2d 56, 59, *trans. denied* (citing Federal Advisory Committee Notes to F.R.C.P. 26). The Federal Advisory Committee Notes on F.R.C.P. 26(b)(4) state in part:

> "It should be noted that the subdivision does not address itself to the expert whose information was not acquired in preparation for trial but rather because he was an actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit. Such an expert should be treated as an ordinary witness."

2 WILLIAM F. HARVEY, INDIANA PRACTICE § 16 at 466 (1987).

Richard argues that because Mr. Greene was an actor or viewer with respect to the subject matter of the suit, he should be treated as an ordinary witness. If Mr. Greene is treated as an ordinary witness, Richard argues, the trial court had no authority under T.R. 26(B)(4) to order him to pay expert witness fees to Mr. Greene.

This leads us to the question of whether Mr. Greene's testimony was acquired in preparation for trial or whether he was an actor or viewer with respect to transactions or occurrences that are part of the

subject matter of the derivative action. Richard relies upon *State v. Bailey* (1999), Ind.App., 714 N.E.2d 1144, 1144, wherein a psychologist and a social worker, deposed by a criminal defendant insisted they be compensated for their depositions. The criminal defendant was only willing to pay lay witness fees as provided by statute. This court upheld the trial court's decision that the witnesses be paid only standard witness fees. *Id.* at 1150. The *Bailey* court based its decision in part upon the fact that the parties had agreed that the witnesses would be questioned regarding facts, not their professional opinions. *Id.*

■ In the present case, there was no such agreement. The party seeking to depose "expert" witnesses who are actors or viewers with respect to transactions or occurrences which are part of the subject matter of the action should bear the burden of showing to the trial court that they will not ask the witness for their expert opinions. Richard made no such showing, and in fact seems to have asked Mr. Greene questions which could appear to call for expert testimony.[13] Richard did not demonstrate to the trial court that he would treat Mr. Greene as an ordinary fact witness.

■ Even if Richard questioned Mr. Greene only as a fact witness and not as an expert, the trial court was still within its discretion when it ordered him to arrange for Mr. Greene's payment before the deposition occurred. The protective order in question was brought pursuant to T.R. 26(C). Trial Rule 26(C) provides in part:

> "Upon motion by any party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending ... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, *or undue burden or expense,* including one or more of the following:

---

13. For example, Richard asked Mr. Greene questions regarding depreciation, qualifica-

tions for S-corporation status, and income tax consequences of distributions and dividends.

(1) that the discovery not be had;

(2) *that the discovery may be had only on specified terms and conditions,* including a designation of the time or place . . . ."

(emphasis added).

Here, the Corporation claimed that undue burden and expense would result if Mr. Greene were not compensated for the time he spent preparing for and giving the deposition. After a hearing on the matter, the trial court agreed and allowed the deposition to occur on the condition that Richard paid Mr. Greene for the time he spent. We cannot say this was an abuse of discretion given the broad discretion of the trial court regarding discovery issues.

 Richard also argues that the trial court erred when it ordered him to pay the deposition expenses of Allen Cummins, the Corporation's farm manager. As with Mr. Greene, Richard claims that Mr. Cummins was merely a fact witness and not entitled to such fees. However, Richard provides no reference to the record in support of his contention. In fact, the deposition of Mr. Cummins cannot be found in the record. We therefore have no basis upon which to decide this issue. In an appellant's brief "[t]he argument *shall* contain the contentions of the appellant with respect to the issues presented, the reasons in support of the contentions along with citations to the authorities, statutes, *and parts of the record relied upon. . . .*" Ind. Appellate Rule 8.3(A)(7) (emphasis supplied). On appeal, it is a complaining party's duty to direct the appellate court's attention to that part of the record that supports its contention. *Community Care Centers, Inc. v. Indiana Family and Social Services Admin.* (1999), Ind.App., 716 N.E.2d 519, 530, *trans. denied.* This is mandated by our appellate rules. *Id.* The purpose of the rule is to relieve courts of the burden of searching the record and stating a party's case for him. *Id.* Although the failure to comply with the appellate rules does not necessarily result in

waiver of an issue, it is appropriate where noncompliance impedes our review. *Id.*

Richard has not only failed to cite to the record in support of his contention that Mr. Cummins was only a fact witness, he has failed to include a transcript of the deposition in the record. Any argument regarding the order to pay fees for the deposition of Mr. Cummins has been waived.

### IV. Contempt

 Richard contends that it was error for the trial court to find him in contempt when he failed to pay Mr. Greene as ordered by the court on May 28, 1998. "Indirect contempt is the willful disobedience of any lawfully entered court order of which the offender had notice." *Mitchell v. Stevenson* (1997), Ind.App., 677 N.E.2d 551, 558, *trans. denied.* Indirect contempt arises from conduct which does not occur in the presence of the trial court, including the failure of a party to obey a court order. *Id* . The determination of whether a party is in contempt of court is a matter within the sound discretion of the trial court. *Id.* We will reverse the trial court's determination only if the court has abused its discretion. *Id.* at 559. A trial court abuses its discretion when its decision is against the logic and effect of the circumstances. *Id.*

Richard knew of the trial court's order to pay Mr. Greene's deposition fees. Before the deposition took place, Richard's attorney informed him of the amount he would have to pay Mr. Greene. Instead of paying the amount, Richard waited for an itemized bill. Although an itemized bill was sent to the Corporation and their attorneys, Richard never received the bill. Thus, Richard argues that it was error for the trial court to have held him in contempt.

The court ordered Richard to pay "all such fees in connection with the testimony of Merrill Greene." Record at 284. Despite notice of the amount owed, and despite a petition for a contempt citation

being filed, Richard refused to pay. Therefore, we cannot say that the trial court abused its discretion when it found that Richard willfully disobeyed its order.

### V. Motion for Continuance

■ Richard's final argument is that the trial court erred when it denied his motion for a continuance and his motion to reconsider. According to Richard's motion for a continuance, he had obtained conditional legal representation, but that attorney required a sixty-day continuance in order to prepare for trial. After this motion was denied, Richard filed a motion to reconsider which indicated that Richard had contacted seven attorneys who refused to represent him prior to obtaining his current counsel, that his prior counsel had become disqualified when he became a witness in the proceeding, and that Richard had a severe case of paranoia. In a memorandum in support of his motion to reconsider, Richard also indicated that he was unable to use his left hand. The trial court denied the motion to reconsider. Richard now contends that he was harmed in that he had to respond to the motion for summary judgment *pro se.*

■ The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. *Robertson v. Board of Zoning Appeals, Town of Chesterton* (1998), Ind.App., 699 N.E.2d 310, 319. We will reverse the trial court only for an abuse of that discretion. *Id.* An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion. *Id.;* Ind. Trial Rule 53.5. However, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. *Id.* The withdrawal of legal counsel does not entitle a party to an automatic continuance, *Danner v. Danner* (1991), Ind.App., 573 N.E.2d 934, 937, *trans. denied,* and the moving party must show diligence in procuring counsel. *Fetner v. Maury Boyd & Associ-*

*ates* (1990), Ind.App., 563 N.E.2d 1334, 1338, *trans. denied.*

Richard insists he had shown good cause in his motion for a continuance and motion to reconsider. Specifically, he maintains that he was diligent in his search for an attorney. We disagree. Over eight months elapsed from the time Richard's first attorney withdrew, and over five months elapsed from the time his second attorney withdrew, to the time of the trial. Richard finally obtained counsel, on the condition that he obtain a sixty-day continuance, only thirty days before the trial was to begin.

In *Hess v. Hess* (1997), Ind.App., 679 N.E.2d 153, 155, this court held it was error for the trial court to deny a motion for a continuance where the movant's attorney had withdrawn from the case only four days prior to trial, and the movant had been unable to obtain another attorney. In *Homehealth, Inc. v. Heritage Mut. Ins. Co.* (1996), Ind.App., 662 N.E.2d 195, 197, *trans. denied,* the defendant's attorney was allowed to withdraw after being listed as a witness by the plaintiffs. That same day, defendants filed a letter from a law firm stating that it would represent the defendants only if a continuance was granted. *Id.* Seven days later, another attorney filed a conditional appearance and motion for continuance. *Id.* The trial court denied this motion. *Id.* Two days after this, yet another attorney filed a limited appearance and a motion for continuance. *Id.* This too was denied. *Id.* at 198. The Court of Appeals reversed and noted, "Rather than demonstrating a lack of diligence, the Appellants were exceptionally diligent in attempting to hire substitute counsel once notified that their present counsel must withdraw." *Id.* at 199. In *Koors v. Great Southwest Fire Ins. Co.* (1988), Ind.App., 530 N.E.2d 780, 783, *abrogated on other grounds by Martin v. Amoco Oil Co.* (1997), Ind.App., 679 N.E.2d 139, the defendant's only remaining attorney was granted leave to withdraw on March 7. The defendant acquired

another attorney who moved for a continuance on March 11, and a hearing on summary judgment was held the next day. The *Koors* court reversed the trial court's denial of the motion for a continuance. In the above cases, the party moving for a continuance had acted with diligence in securing legal representation.

In contrast, in *Fetner, supra,* 563 N.E.2d at 1338, the defendant moved for a continuance in order to secure a local attorney to represent him at trial. Affirming the trial court's decision to deny the motion, we noted that the defendant's attempts to secure trial counsel were "sporadic at best." *Id.* In *Fetner,* the defendant failed to secure trial counsel to represent him at a hearing on sanctions on April 3, 1989, even though the complaint was filed on March 31, 1988. *Id.* at 1336. From April 1989, through the end of June 1989, the defendant in *Fetner* made "absolutely no attempt to secure local trial counsel." *Id.* Also in *Fetner,* despite the fact that the trial was set to start in July, the defendant waited until the end of June of 1989 to contact one law firm, and did not contact the firm that did agree to represent him until the second week of July.

In the case before us, Richard's attempts to seek representation are more akin to the conduct in *Fetner* than in *Hess, Homehealth,* or *Koors.* Contacting eight attorneys over such a long period of time can hardly be called a diligent effort to seek counsel. Given the deference necessarily due the trial court's decision, we cannot say the trial court abused its discretion by denying Richard's motion for a continuance.

### VI. Conclusion

In conclusion, we hold that summary judgment upon the shareholder derivative claim was inappropriate. However, summary judgment upon the direct claims was properly entered. Furthermore, the trial court did not abuse its discretion by ordering Richard to pay the expenses of Merrill Greene and Allen Cummins. Nor did the trial court err by holding Richard in contempt when he failed to do so. Finally, the trial court did not abuse its discretion in denying Richard's motion for a continuance.

The judgment is affirmed in part, reversed in part, and remanded.

BAILEY, J., and VAIDIK, J., concur.