# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 08 2018, 8:51 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Derick W. Steele
Deputy Public Defender
Kokomo, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of W.M., Legal Father, and K.M., Minor Child,

W.M.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

August 8, 2018

Court of Appeals Case No.
18A-JT-167

Appeal from the
Howard Circuit Court

The Honorable
Lynn Murray, Judge

Trial Court Cause No.
34C01-1707-JT-241

**Kirsch, Judge.**

[1] W.M. ("Legal Father") appeals the juvenile court's order terminating his legal parental rights to his minor child, K.M. ("Child"). Legal Father raises one issue on appeal, which we restate as whether the juvenile court abused its discretion when it did not grant his request for a continuance.

[2] We affirm.

## Facts and Procedural History

[3] Child was born on November 5, 2015. *Appellant's App. Vol. 2* at 27, 36. Legal Father signed a paternity affidavit following Child's birth and was shown as the father on Child's birth certificate. *Id.* at 36. On January 11, 2016, Child was removed from S.K.'s ("Mother") care after Mother was found to have overdosed on heroin while Child was in her arms; Mother was later arrested. *Id.* at 37-38. Mother was charged with four counts of criminal conduct related to her possession of illegal substances, paraphernalia, and neglect of dependent. *Pet'r's Ex.* 3. When the child was removed from Mother's care, Legal Father "was incarcerated for multiple drug charges, and ultimately pled guilty to Resisting Law Enforcement and Possession of Methamphetamine." *Appellant's App. Vol. 2* at 38.

[4] On January 13, 2016, Indiana Department of Child Services ("DCS") filed a petition alleging that Child was a child in need of services ("CHINS"), and Child was placed in foster care. *Id.* at 29, 32, 125. On February 29, 2016, during a scheduled fact finding hearing, Legal Father and Mother stipulated that Child was a CHINS. *Id.* at 38. The dispositional hearing was held on March 14, 2016, and the juvenile court ordered reunification services. *Id.* at 38-39. At the hearing, the

juvenile court also ordered DCS to conduct DNA testing to ascertain whether T.W., a man alleging he was Child's father, was Child's biological father. *Id*. at 40.

[5] In March 2016, Legal Father was released from incarceration. *Id*. at 41. He did not immediately contact DCS, and DCS found it hard to engage Legal Father. *Id*. In April 2016, Legal Father began to participate in services, but his engagement was "abysmal." *Id*. at 43.

[6] On April 5, 2016, DNA reports confirmed that T.W. ("Biological Father") was Child's biological father. *Id*. at 42. The juvenile court issued an order on June 13, 2016, excluding Legal Father as a party to the CHINS case and directing that DCS was no longer required to provide services to Legal Father. *Id*. at 42. The juvenile court no longer identified Legal Father as Child's father in its CHINS orders. *Pet'r's Ex*. at 157-58, 162-64, 165-66, 168-69; *Appellant's App. Vol. 2* at 14-15.

[7] Legal Father only visited with Child twice during the underlying case, and the last time was in May 2016. In the same month, Legal Father was arrested for maintaining a common nuisance and incarcerated until November 2017. *Appellant's App. Vol. 2* at 42.

[8] In July 2017, DCS filed its termination petition, and the juvenile court held the initial hearing on July 24, 2017. *Id*. at 36. Mother and Biological Father had already consented to the adoption of Child. *Id*. Legal Father's newly appointed counsel filed a motion requesting a continuance to prepare for the termination of parental rights hearing, which the juvenile court granted on September 27, 2017.

*Id.* at 4, 24, 26. The termination hearing, originally set for October 2, 2017, was rescheduled for December 4, 2017. *Id.* at 26. During Legal Father's testimony at trial, he stated "I'd like to just start everything all over again and give it another shot". *Tr.* at 32. Legal Father requested additional time to get involved in services to prove to the court that he could provide Child with a safe, loving environment that she is entitled to. *Tr.* at 45. On December 20, 2017, the juvenile court entered its termination decree. *Id.* at 35-52.

## Discussion and Decision

[9] On appeal, Legal Father does not challenge the juvenile court's findings of fact or conclusions thereon, but he argues that the juvenile court abused its discretion when it failed to grant him a continuance when he asked to have more time to complete services at the termination hearing., *Id.* at 44-45. The decision to grant or deny a motion for a continuance rests within the sound discretion of the trial court. *Riggin v. Rea Riggin & Sons, Inc.,* 738 N.E.2d 292, 311 (Ind. Ct. App. 2000). We will reverse the trial court only for an abuse of that discretion. *Id.* An abuse of discretion may be found in the denial of a motion for a continuance when the moving party has shown good cause for granting the motion; however, no abuse of discretion will be found when the moving party has not demonstrated that he or she was prejudiced by the denial. *Id.*

[10] Legal Father argues that the juvenile court abused its discretion when it failed to grant him a continuance when he stated that he wanted to start all over again and requested to have additional time. *Id.* at 32, 44, 45. Father had filed a previous

request for a continuance, and that request was granted on September 27, 2017. This request was made in the middle of Legal Father's testimony at the hearing to terminate his parental rights.

[11] Legal Father argues that his case is similar to *Rowlett v. Vanderburgh County Office of Family & Children*, 841 N.E.2d 615 (Ind. Ct. App. 2006). In *Rowlett*, Father appealed the juvenile court's decision denying his motion for continuance of the termination of parental rights hearing scheduled for April 12, 2005. *Id*. at 618. Father had been incarcerated for almost three years and was due to be released in June 2005. *Id*. at 619. This court found that the trial court abused its discretion because father had not had the opportunity to participate in services offered by DCS or to demonstrate his fitness as a parent. *Id*. Furthermore, this court indicated that Rowlett's release date was just six weeks from the date of the termination of parental rights hearing. *Id*.

[12] Unlike *Rowlett*, Legal Father here was provided with an opportunity to participate in services and visitation prior to the termination proceeding; however, he failed to complete services and did not visit with Child regularly. Courtney Calhoun ("Calhoun"), Homebased Case Manager, testified that Legal Father cancelled a number of his appointments because he was prioritizing his work over visitation with Child. *Tr*. at 20. Calhoun stated that Legal Father was supposed to have six hours a week of visitation with Child; however, he only participated in two visits in two months. *Id*. at 21.

[13] Legal Father's visitation with Child was infrequent for various reasons. On three or four occasions, he tested positive on drug screens. *Id.* On another, he missed visitation because he forgot about an appointment to put up a fence for a landscaping client. *Id.* In addition, Legal Father missed three or four case management appointments with Calhoun. *Id.* Ultimately, Legal Father's referral for services and visitation with Calhoun was cancelled because he was arrested again for violating his probation.

[14] Legal Father contends that he did not receive services upon his release from jail in November 2017; however, DCS was no longer required to provide him with services. He was not Child's biological father and was no longer a party to the CHINS case. Unlike *Rowlett*, Legal Father did not participate in services while incarcerated that would be helpful to him in reaching his goal of reunification with Child. Instead, Legal Father received an infraction and was placed on lockdown for an assault.

[15] The trial court did not abuse its discretion when it denied Legal Father's request for a continuance.

Affirmed.

Vaidik, C.J., and Riley, J., concur.