**John Allen PIERCE, Appellant–Petitioner,**

v.

**Lisa Ann PIERCE, Appellee–Respondent.**

No. 67A01–9304–CV–129.

Court of Appeals of Indiana, First District.

Sept. 15, 1993.

Larry A. Minnix, Bruce E. Andis, Cohen & Malad, P.C., Indianapolis, for appellant-petitioner.

James Wm. Phipps, Greencastle, for appellee-respondent.

BAKER, Judge.

Appellant-respondent John Pierce appeals the trial court's modification of child custody granting appellee-petitioner Lisa Pierce sole custody and awarding child support. The appeal raises several issues which we restate as:

I. Whether Lisa's improved mental health constituted a change so substantial and continuing as to render the original custody agreement unreasonable.

II. Whether John's misconduct constituted a change so substantial and continuing as to render joint custody unreasonable.

III. Whether the trial court properly included the imputed value of rental income to the father in computing child support.

We affirm in part, reverse in part, and remand with instructions.

## FACTS

On August 30, 1991, the Putnam Circuit Court dissolved the Pierces' marriage. Pursuant to a mediation clause in the settlement agreement incorporated in the decree, John and Lisa subsequently agreed to joint custody of the minor children, whereby John would have physical custody. At the time of dissolution, Lisa was suffering from serious depression and unable to work.

Lisa eventually recovered enough to return to work. Noting her improved circumstances, John petitioned for child support. In response, Lisa petitioned the trial court to modify custody based on her improved mental health and John's lack of cooperation in exercising joint custody. John refused to return to mediation.

After a hearing, then Judge Vaughn granted Lisa sole custody of both children. He also awarded child support based on John's income, including imputed income for housing John received from his employer for which he paid less than market price. Subsequently, the new Putnam Circuit Court Judge, Judge Laviolette, replaced Judge Vaughn and reaffirmed the trial court's decision, without a hearing.

John appeals the trial court's conclusions of law with respect to the change of custody and appeals the child support award based on insufficient evidence.

## DISCUSSION AND DECISION

### I. Standard of Review

A trial court may modify a custody arrangement "only upon a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." IND.CODE 31–1–11.5–22 (Supp.1992); *Lamb v. Wenning* (1992), Ind., 600 N.E.2d 96, 98.

■ In an initial custody determination, the trial court presumes that both parents are equally entitled to custody. *Id.* The trial court makes this initial custody determination by deciding in which parent's custody the child would be better off. *Id.* A trial court considering modification of a custody order neither redetermines who would make the better parent nor redecides in whose hands the children would be better off; it determines only if the original order has become unreasonable. *Id.*

■ On appeal, there are two situations in which we may reverse a custody modification: 1) if the parent seeking modification fails to allege and prove a decisive change in conditions and the trial court findings do not show such changes existed and warranted a modification; or 2) if the trial court's decision constitutes an abuse of discretion. *Simons v. Simons* (1991), Ind.App., 566 N.E.2d 551, 555. We do not reweigh evidence or reassess witness credibility, and we consider only evidence which supports the trial court's decision. *Elbert v. Elbert* (1991), Ind.App., 579 N.E.2d 102, 106.

■ Our courts have long recognized that the child's interest is the paramount consideration in custody modifications and takes precedence over the parent's interests and desires. *Lamb, supra,* at 98, 99; *see also, e.g., State ex rel. Beineke v. Littell* (1966), 247 Ind. 686, 690, 220 N.E.2d 521, 523; *Wible v. Wible* (1964), 245 Ind. 235, 241, 196 N.E.2d 571, 574. One of these concerns is in trying to provide as stable a childhood as possible. *Dunlap v. Dunlap* (1985), Ind.App., 475 N.E.2d 723, 726. This interest has given rise to the strong presumption that an existing custody agreement should stand. *Lamb, supra,* at 98, 99. A divorce and the subsequent separation of parents is sufficiently disruptive and traumatic upon children. Courts should not add to that disruption and trauma by modifying custody except where there is a strict showing that the change in circumstances is so substantial and continuing it renders the existing custody unreasonable.

### II. Improved Circumstances

■ Lisa argues that a court may consider the noncustodial parent's circumstances in determining whether to modify a custody arrangement. We agree. *See Lamb, supra* at 99; *see also Poret v. Martin* (1982), Ind., 434 N.E.2d 885, 888; *Drake v. Washburn* (1991), Ind.App., 567 N.E.2d 1188, 1190. However, we find no Indiana case and Lisa cites none in which a trial court properly modified custody where the primary motivation for that change was improvements in the noncustodial parent's overall fitness as a parent.

■ Indiana courts have upheld a change in custody because of changes in the custodial parent's overall fitness as a parent. *See In re Paternity of Seifert* (1993), Ind.App., 605 N.E.2d 1202 (one of the primary factors in custody change was custodial parent's felony conviction for battery of the child); *Bingaman v. Bingaman* (1991), Ind.App., 580 N.E.2d 699; *Hunt v. Whalen* (1991), Ind.App., 565 N.E.2d 1109 (primary factor behind changing custody (to a non-parent) was custodial parent's unfitness); *Schenk v. Schenk* (1991), Ind. App., 564 N.E.2d 973 (motivating factor behind custody modification was impending return to custodial parent's household of person who had previously molested the custodial parent's children).

In modifying custody, the trial court concluded:

1. As the Indiana Supreme Court stated in the case of *Owen v. Owen*, 563 N.E.2d 605 (Ind.1990), "There is no question but that a worsening mental condition may constitute a change in circumstances sufficient to necessitate modification of custody." It would therefor [sic] follow that an improvement in a noncustodial parents [sic] mental condition would also constitute a change in circumstances sufficient to compel a modification of custody.

*Record* at 158. This is incorrect.

A deterioration in a custodial parent's mental condition is very likely to impact children's welfare, which could in turn render custody with that parent unreasonable. *Owen v. Owen* (1990), Ind., 563 N.E.2d 605, 608. An improvement in a noncustodial parent's mental condition is likely to improve the children's welfare, but it does not follow that this improvement will render the existing custody unreasonable.

■ Here, Lisa demonstrates a significant improvement in her mental condition and a significant improvement in her financial situation. However, this alone will not suffice to switch custody from John to her.

### III. Misconduct by Custodial Parent

#### A. Misconduct as to Changes in Custody

■ Generally, cooperation or lack thereof is not appropriate grounds for switching custody. Were a court to consider it in determining a change of custody, it would impermissibly punish a parent for noncompliance with a custody agreement. *See In re Marriage of Ferguson* (1988), Ind.App., 519 N.E.2d 735, 736. This is in accordance with the supremacy of the child's interest in permanence and stability over a parent's preferences, *Lamb, supra*

1. We note our sister state Illinois provides only two explicit factors for a court's consideration in determining the reasonableness of joint custody, residential circumstances and ability to cooperate. 750 ILCS 5/602.1(c)(1), (2) (1993).

2. Mississippi more explicitly defines cooperation.

at 98, 99; *Beineke, supra; Wible, supra.* To do otherwise would be ignoring the very interest courts are trying to protect.

■ Only in cases of egregious violations of custody where the child's welfare is at stake should a court modify a custody order. "The noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of [a] child custody order; the noncustodial parent must show that the changed circumstances regarding the custodial parent's stability and the child's well-being are substantial and continuing." *Simons, supra*, at 555; *see also Pea v. Pea* (1986), Ind.App., 498 N.E.2d 110, 113.

#### B. Misconduct as to Joint Custody

■ Any court-ordered change in custody requires the original custody to be unreasonable. I.C. 31-1-11.5-22(d). Since it involves virtually identical considerations, courts use the same criteria and standards for decisions to change the parent with primary custody as they do for decisions to change the parent with sole custody. *Lamb, supra.* However, decisions changing joint to sole custody may require different considerations.

Courts contemplate five specific issues in determining the reasonableness of a joint custody decree. I.C. 31-1-11.5-21(g). At least two of these, proximity of residences and willingness to cooperate, directly implicate the parents' ability to jointly raise the children. *See Lamb, supra*, at 99.[1] Of importance here is I.C. 31-1-11.5-21(g)(2), which provides "whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare."[2]

An award of joint physical and legal custody obligates the parties to exchange information concerning the health, education and welfare of the minor child, and unless allocated, apportioned or decreed, the parents or parties shall confer with one another in the exercise of decision-making rights, responsibilities and authority.
MISS.CODE 93-5-24(5) (Supp.1989).

■ The trial court found that John behaved in such way as to deprive Lisa of an opportunity to materially participate in the children's upbringing. If the reasonableness of joint custody were not at issue, this course of conduct would not support a change in custody. In this case, such misconduct is sufficient to render unreasonable the existence of joint custody. *See e.g., Wilk v. Wilk* (1989), Mo.App., 781 S.W.2d 217, 221 (disagreements over visitation and unilateral decision making render joint custody infeasible).

■ Here, the trial court found that John failed to cooperate in executing joint custody, and John does not challenge these findings of fact. By making joint custody unreasonable, lack of cooperation by the primary custodian may in turn make sole custody with that parent unreasonable.

Were a court to award custody to the uncooperative custodial parent, it would create a perverse incentive. A parent with physical custody could obtain sole custody by usurping the other parent's joint custodian rights, then petitioning to modify custody since joint custody would no longer be reasonable. That parent could then receive the benefit of the presumption that children remain in the custody they are in, and receive sole custody. Were a court even to allow that parent to continue in physical but joint custody, it would create another perverse incentive. Knowing that the other would hope to avoid protracted divorce litigation, one parent could induce the other to enter a joint custody agreement and to give up primary custody. That parent could then obtain essentially sole custody depriving the other of parenting privileges, and the noncustodial parent would have no remedy.

■■ We will not sanction such injustice. A parent may not sow seeds of discord and reap improved custody rights.[3] Where a parent with physical custody vol-

untarily and unreasonably causes joint custody itself to become unreasonable, that parent may lose custody of the children altogether.

■ The trial court properly awarded Lisa sole custody, but for improper reasons. Nevertheless, we will affirm any of the trial court's conclusions for which there is a factual basis. *Marshall County Redi-Mix, Inc. v. Matthew* (1984), Ind., 458 N.E.2d 219, 221.

### IV. Child Support

■ Lisa sought child support, thus she has the burden to prove John's income. *Beeson v. Christian* (1991), Ind. 583 N.E.2d 783, 788. Lisa claims that only she "provided the trial court with any information regarding the relative value of the father's employer provided [sic] dwelling." *Appellee's Brief* at 18. This does not meet her burden.

She argues that John "should be estopped" from now raising the issue because he presented no evidence at the modification hearings as to the value of his residence. Other than Lisa's unsupported suggestions contained in her proffered findings, no evidence exists as to the value of John's residence. Lisa even admits that she "cannot argue this issue on an elaborate set of facts supporting her valuation of [John's residence]. The record is sparse." *Appellee's Brief* at 18. Here, she is correct. The record is so sparse as to be barren. In fact, it was error for the trial court to consider any value of the residence as part of John's income. We remand so that the trial court may recompute John's support obligation without considering any imputed income for John's residence.

### CONCLUSION

To the extent the trial court found that Lisa's changed circumstances support

---

3. Equity dictates that a right cannot arise to anyone out of his or her own wrong, *Riddlesbarger v. Riddlesbarger* (1944), 324 Ill.App. 176, 190, 57 N.E.2d 901, 907; *Strand Amusement Co. v. City of Owensboro* (1932), 242 Ky. 772, 774, 47 S.W.2d 710, 712, and actions for and incidental to divorce are essentially equitable in nature. *Cf. Musselman v. Musselman* (1873), 44 Ind. 106, 110–12; N.J.Rule of Court 5:1–2(a) (1993) (assigning divorce and custody cases to Chancery Division of Superior Court).

changing custody from John to Lisa, it erred. Nonetheless, the trial court properly found joint custody unreasonable. The trial court also properly determined that Lisa should have sole custody; proper for reasons stated in this opinion. To the extent the trial court included any value for John's residence in determining his support obligation, it erred, and we remand to recompute that support.

Judgment affirmed in part, reversed in part, and remanded with instructions.

ROBERTSON and GARRARD, JJ., concur.