# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 13 2016, 8:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jim Brugh
Logansport, Indiana

ATTORNEY FOR APPELLEE

Bradley A. Rozzi
Hillis, Hillis, Rozzi & Achey
Logansport, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Jenny R. (Willison) Eggerling, | May 13, 2016 |
| *Appellant-Respondent,* | Court of Appeals Case No. 09A02-1511-DR-2012 |
| v. | Appeal from the Cass Superior Court |
| Anthony Willison, | The Honorable Thomas C. Perrone, Judge |
| *Appellee-Petitioner.* | Trial Court Cause No. 09D01-1007-DR-53 |

**Baker, Judge.**

[1] Jenny Eggerling (Mother) appeals the judgment of the trial court awarding physical and legal custody of her three children to their father, Anthony Willison (Father), and ordering her to pay $207 in weekly child support. Finding no error, we affirm.

## Facts

[2] Mother and Father have three children who were born in 1997, 2000, and 2004. When their marriage was dissolved in 2011, they agreed that they would share legal custody of the children and that Mother would have physical custody of the children with Father exercising parenting time. However, in 2013, Mother attempted to relocate the children to Lafayette. Father objected, and the trial court entered an order prohibiting Mother from relocating the children.

[3] In 2014, Mother and Father agreed to a modification of the original dissolution order. The modified order provided that Father would now have physical custody of the two oldest children and that both parents would retain joint legal custody. Mother and Father also agreed at that time that they would share physical and legal custody of their youngest child. The trial court noted that, except for custody of the two oldest children, all of its orders were temporary, and further proceedings would be held to determine a permanent arrangement.

[4] Mother and Father had difficulty with this temporary arrangement. On October 15, 2014, Father filed a petition asking the trial court to suspend Mother's parenting time after he was informed of a physical altercation between

their oldest child and Mother. Following a hearing held on December 16, 2014, the trial court granted Father's petition.

[5] On May 8 and August 11, 2015, the trial court held a hearing to determine a permanent custody and support arrangement. At the hearing, the trial court heard testimony from Mother, Father, Father's new wife, the Guardian ad Litem (GAL), a family therapist, the youngest child's therapist, and Mother's therapist. Following the hearing, on October 20, 2015, the trial court issued an order granting legal and physical custody of all three children to Father. It also ordered Mother to pay $207 in weekly child support. Mother now appeals.

## Discussion and Decision

[6] Mother argues that the trial court erred in awarding legal and physical custody of the three children to Father. She also argues that the trial court erred in ordering her to pay $207 in weekly child support, as this figure is based on Mother's 2011 income rather than her current income.

## I. Custody

[7] On review of a child custody modification we will not reweigh the evidence or judge the credibility of the witnesses and we will consider only the evidence that supports the trial court's decision. *Wallin v. Wallin*, 668 N.E.2d 259, 261 (Ind. Ct. App. 1996). Indiana Code section 31-17-2-21 provides that a trial court may not modify a custody order unless it is in the best interests of the child and there has been a substantial change in one or more of the factors that the court may consider when entering an initial custody order under section 31-17-2-8. That

section instructs the trial court to consider *all relevant factors*, including the age and sex of the child; the wishes of the children and the parents; the child's interaction with the parents; and the child's adjustment to his or her home, school, and community. I.C. § 31-17-2-8.

[8] In reaching its decision in this case, the trial court made clear that, in addition to the above-mentioned factors, it also considered the factors listed in Indiana Code section 31-17-2-15 regarding joint legal custody. That section provides that, in deciding whether to award joint legal custody, the trial court shall consider things such as "whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare" and "the nature of the physical and emotional environment in the home of each of the persons awarded joint custody," among others. I.C. § 31-17-2-15.

[9] The trial court had ample evidence before it from which it could determine that a lack of communication between the parents made continued joint legal custody unworkable and contrary to the best interests of the children. The youngest child's therapist testified that Mother and Father found it difficult to co-parent. Tr. p. 316. Despite the joint legal custody arrangement, Mother failed to inform Father about which therapists the children were seeing. Tr. p. 223, 505. Following the trial court's decision to prohibit Mother from moving the children to Lafayette, Mother nevertheless enrolled her youngest child in extracurricular activities in Lafayette—an action for which she was later held in contempt. Appellee's App. p. 10. These actions suggest an unwillingness on

Mother's part to cooperate and communicate with Father to advance the interests of the children.

[10] Furthermore, the trial court had evidence before it indicating that the children now wished to reside with their Father. The children were separated when Mother and Father agreed that Father should retain custody of the two oldest children. The youngest child's therapist testified that the child wishes to live with her Father and that she has a close bond with her older sister and feels that she can confide in her. Tr. p. 280, 282. Mother's relationship with her older children has deteriorated—the children have described Mother as "mean" and "aggressive"—and the family therapist testified that the children held angry and hostile attitudes towards Mother. Tr. p. 22-24, 184.

[11] Mother argues that Father is primarily responsible for this state of affairs and that he "has been the trigger of several obstreperous events between the parents." Appellant's Br. p. 16. Mother gives no examples of these events nor does she provide citations to the record. While Mother rightly points out that "[a] parent may not sow seeds of discord and reap improved custody rights," *Pierce v. Pierce*, 620 N.E.2d 726, 731 (Ind. Ct. App. 1993), her brief does not explain how Father has done that here. Mother simply asserts that "Father has created the problem from which he now benefits," without any citation to the record in support of this conclusion. Appellant's Br. p. 17. Mother has failed to make even a prima facie showing that Father is responsible for this situation, let alone a showing strong enough to convince this Court that the trial court acted erroneously by finding in Father's favor. Mother's argument is little more

than a request that we reweigh the evidence and pay no deference to the trial court's decision, which this Court will not do.

## II. Child Support

Mother next argues that the trial court erred in ordering her to pay $207 in weekly child support. Mother believes this was error because it is based off of the income she earned in 2011. Mother has since remarried and is currently voluntarily underemployed. Tr. p. 508.

Indiana Child Support Guideline 3(A)(3) applies in the case of a voluntarily unemployed, or underemployed, parent. It provides:

> If a court finds a parent is voluntarily unemployed or underemployed without just cause, child support shall be calculated based on a determination of potential income. A determination of potential income shall be made by determining employment potential and probable earnings level based on the obligor's work history, occupational qualifications, prevailing job opportunities, and earnings levels in the community.

Here, the trial court, after finding that Mother was voluntarily underemployed, imputed income to her based on her previous employment as evidenced by a 2011 child support worksheet that she had previously submitted to the trial court.

Mother argues that her "employment opportunity in 2011 is no longer available." Appellant's App. p. 21. However, this does not preclude the trial court from concluding that Mother could find similar employment today.

Mother admits she is voluntarily underemployed and she does not argue that her employment history as of 2011 is not an accurate measure of her present employment potential. Tr. p. 508. Child Support Guideline 3(A)(3) makes clear that the trial court may impute income to a parent under circumstances such as these. That is what the trial court has done here, and Mother has given us no reason to conclude that it was done in error.

[15] The judgment of the trial court is affirmed.

May, J., and Brown, J., concur.