## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 31 2016, 8:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael H. Michmerhuizen
Barrett McNagny LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Nicholas J. Hursh
Paul R. Sturm
Shambaugh, Kast, Beck &
Williams, LLP
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Marriage of:

David A. Anzelmo,

*Appellant-Respondent,*

v.

Elizabeth M. Anzelmo,

*Appellee-Petitioner.*

August 31, 2016

Court of Appeals Case No.
17A03-1512-DR-2170

Appeal from the Dekalb Superior Court

The Honorable Monte L. Brown, Judge

Trial Court Cause No.
17D02-1011-DR-323

**Najam, Judge.**

# Statement of the Case

David A. Anzelmo ("Father") appeals the trial court's denial of his Motion to Continue a custody modification hearing where the court granted Elizabeth M. Anzelmo ("Mother") sole legal custody of their two children. At the same hearing, the court found Father in contempt of court due to Father's failure to pay child support and for extracurricular expenses. Father raises the following issues for our review:

1. Whether Father was prejudiced by the denial of his request for a continuance.

2. Whether the trial court abused its discretion when it modified custody and parenting time.

We affirm in part and reverse in part.

# Facts and Procedural History

On October 1, 2010, Mother filed a petition for dissolution of marriage against Father. On January 26, 2012, the parties entered into a Mediated Marital Settlement ("the Settlement"). The Settlement provided, in relevant part, that the parties would have joint legal custody of their minor children, with Mother having primary physical custody. The Settlement also allowed Father parenting time with the children pursuant to the Indiana Parenting Guidelines, with the following additions: one overnight visit on weekdays, one extra weekday visit, and alternate weekends extended by one day. On May 2, the parties entered into a Stipulation for Court Order to Counsel and Mediate Child Issues,

whereby the parties stipulated that, prior to seeking assistance from the Court, the parties would seek counseling with Reverend Dr. Thomas Smith regarding issues associated with parenting time. The dissolution court accepted that stipulation ("the stipulation").

[4] On March 19, 2015, Mother filed a Verified Information for Rule to Show Cause ("March 19 Rule to Show Cause") in which she asserted that Father had refused to pay both his child support obligations and his portion of the children's extracurricular expenses. On April 14, Mother filed another Rule to Show Cause ("April 14 Rule to Show Cause") in which she asserted that Father had failed to abide by parenting time exchange stipulations. The trial court scheduled both Rules to Show Cause for a hearing for June 15.

[5] On June 3, Father asked his counsel to withdraw, and Father's counsel filed his motion to withdraw with the trial court. On June 10, the court granted that motion. On June 11, Father filed a letter with the court requesting a continuance for the June 15 hearing date due to lack of legal representation. The court granted Father's request for a continuance and rescheduled the hearing for August 5.

[6] On June 24, Mother filed a Verified Petition to Modify Custody and Respondent's Parenting Time ("Petition to Modify Custody"), which the court also scheduled for hearing on August 5. About three weeks after Mother's filing, on July 13 Father contacted Attorney Linda Peters Chrzan and requested that she represent him. However, she informed him that, because of a prior

commitment, she would be unable to represent him on the August 5 hearing date. Chrzan also informed Father that, even if she were available to represent him, less than thirty days would not be sufficient time for her to prepare for a contested custody hearing. Since Father had a desire to be represented by Chrzan, Chrzan sent an email to Mother's counsel on July 17 and stated that Father had contacted her to be his counsel, but that she was unavailable on August 5. She requested that Mother's counsel agree to reset the hearing following mediation consistent with the Indiana Parenting Time Guidelines. Chrzan followed up with Mother's counsel on July 20 and 23. Mother's counsel did not respond until July 23, when he advised Chrzan that Mother did not agree to continue the hearing.

[7] On July 29, Father filed a letter with the court in which he requested a continuance due to Chrzan's scheduling conflict ("Motion to Continue"). However, the trial court denied his request on July 31. On August 5, Father appeared pro se and Mother appeared with counsel. At the hearing, Father renewed his request for a continuance, but the court denied it.

[8] On September 1, the trial court issued an order in which it denied the April 14 Rule to Show Cause. In regards to the March 19 Rule to Show Cause, the court found that Father had refused to pay his child support and his portion of the extracurricular expenses. Therefore, the trial court found Father in contempt and ordered him to pay his obligations within sixty days of the contempt order. Finally, in regards to the Petition to Modify Custody, the

court entered the following relevant findings of fact, conclusions thereon, and judgment:

11. That with regard to the Petitioner's Petition to Modify Custody and Parenting Time, the Court makes the following findings and conclusions:

    (a) That Petitioner no longer agrees that joing legal custody is in the best interest of the parties' minor children;

    (b) That the communication between Petitioner and Respondent has deteriorated from the date said agreement was entered into and specifically has deteriorated further since August 20, 2014, to the point where it is largely ineffective between the two parties;

    (c) That the evidence established that the children's homework is not being properly completed when with Respondent;

    (d) That the exchange of the children for parenting time purposes is often time[s] hostile and [the children] are frequently not exchanged as agreed upon; and

    (e) That the Court finds there is a substantial change in more than one of the factors the Court may consider pursuant to I.C. 31-17-2-8.

12. That the Court finds that a modification of the Custody and Parenting Time Order heretofore entered is in the best interest of the parties' minor children.

13. That the Custody Order heretofore entered is modified and the Petitioner is immediately granted the sole legal and sole physical custody of the parties' minor children.

14. That the Parenting Time Order heretofore entered is modified immediately and Respondent is now granted parenting time with the parties' minor children as so provided for in the Indiana Parenting Time Guidelines, specifically, section 2(D)(1), a copy of which Parenting Time Guidelines are attached hereto[,] incorporated herein[,] and made a part hereof.

15. That the exchange of the children for parenting time purposes shall occur as provided for at paragraph 1(c) of the Mediated Stipulation filed on August 20, 2014.

16. That both parties are admonished that[,] unless otherwise agreed to in writing (which can include e-mail and text messaging)[,] said exchange shall be completed in a timely manner as provided for in the Parenting Time Guidelines.

Appellant's App. at A-022-23.

[9] On September 28, Father, by counsel, filed a Motion to Correct Error and Request for a New Trial on the grounds that the court had erred when it denied his Motion to Continue. Father asserted that the trial court violated his due process rights in its failure to allow him to obtain new counsel and that the modification of custody was contrary to the children's best interests and not

supported by the record.  Furthermore, he also contended that six weeks[1] was not sufficient time to prepare for a contested custody trial and that the finding of contempt was in error.  This appeal ensued.

# Discussion and Decision

## *Denial of Motion to Continue*

[10]    Father first asserts that the trial court erred when it denied the Motion to Continue.  Our standard of review for a denial of a motion for a continuance is well-settled:[2]

> The decision to grant or deny a motion for a continuance is within the sound discretion of the trial court.  We will reverse the trial court only for an abuse of that discretion.  An abuse of discretion may be found on the denial of a motion for continuance when the moving party has shown good cause for granting the motion.  A trial court abuses its discretion when it reaches a conclusion which is clearly against the logic and effect of the facts or the reasonable and probable deductions which may be drawn therefrom.  If good cause is shown for granting the motion, denial of a continuance will be deemed to be an abuse of discretion.

*F.M. v. N.B.*, 979 N.E.2d 1036, 1039 (Ind. Ct. App. 2012) (citations and quotations omitted).

---

[1] Mother filed Petition to Modify Custody on June 24, which was six weeks prior to the hearing date.

[2] This appeal ensues from a Motion to Correct Error regarding the denial of Father's Motion to Continue. The standard of review for a Motion to Correct Error is also an abuse of discretion.  *Allstate Ins. Co. v. Hennings*, 827 N.E.2d 1244, 1250 (Ind. Ct. App. 2005).

[11] Father contends that the trial court abused its discretion when it denied his Motion to Continue. Specifically, Father contends that he showed good cause for the continuance because he was did not have counsel, was diligent in attempting to hire new counsel, and did not have sufficient time to prepare for hearing once he did find new counsel. He also maintains that he was prejudiced by the denial of his Motion to Continue because he had to proceed pro se during the August 5 hearing.

[12] "The withdrawal of legal counsel does not entitle a party to an automatic continuance, and the moving party must show diligence in procuring counsel." *Riggin v. Rea Riggin & Sons, Inc.*, 738 N.E.2d 292, 311 (Ind. Ct. App. 2000) (citations omitted). In *Riggins*, we held that the appellant did not diligently seek new counsel when over eight months had elapsed between the time his first attorney withdrew and the trial, and over five months had elapsed between the time his second attorney withdrew and the trial, yet the appellant had contacted only eight attorneys in that entire time period. *Id*. at 311-12. We also noted that the appellant did not obtain counsel until thirty days before trial and, even then, counsel's representation was conditioned on the appellant obtaining a sixty-day continuance. *Id*. Under such circumstances, we held that the trial court did not abuse its discretion in denying the appellant's motion for a continuance. *Id*. at 312.

[13] Similarly, in *Gunshekar v. Grose*, 915 N.E.2d 953, 956 (Ind. 2009), the appellants' attorney filed a motion to withdraw eight weeks before trial. *Id*. at 954. The trial court granted the attorney's motion six weeks before trial. *Id*.

Eleven days before trial and nearly forty-five days after counsel had withdrawn, the appellants requested a continuance for more time to hire new counsel. *Id.* The trial court denied the request, and our supreme court held that the trial court's judgment was not an abuse of its discretion. *Id.* at 956. In particular, the court reasoned that the appellants neither said nor did anything to indicate that they had diligently sought new counsel "during the eight weeks after attorney Martin withdrew." *Id.*

[14] In *Danner v. Danner*, 573 N.E.2d 934, 936-37 (Ind. Ct. App. 1991), *trans. denied*, which involved a modification of the decree of marriage dissolution and a protective order, the appellant sought a continuance after he had obtained new counsel six weeks before the hearing. On appeal from the trial court's denial of that request, the appellant contended that he was prejudiced by the denial of his motion because six weeks was not sufficient time for his new counsel to obtain experts. *Id.* at 937. This court disagreed and affirmed the trial court's judgment. *Id.* This court reasoned that appellant's "new counsel entered his appearance six weeks before the hearing which was sufficient time to secure experts." *Id.*

[15] The present case is similar to both *Riggins* and *Gunshekar* in that Father's attempts to secure new counsel were not diligent. After Father contacted Chrzan on July 13 and she informed him that she was unavailable for the August 5 hearing, Father did not make any other attempts to secure new counsel over the ensuing 23 days. Furthermore, the trial court had accepted the withdrawal of Father's initial counsel on June 10, 2015, one week after Father

had asked his initial counsel to withdraw, and Mother filed the Petition to Modify Custody on June 24. Yet, Father did not attempt to contact any attorneys at all until he contacted Chrzan on July 13, less than one month before the August 5 hearing. Finally, Father's contention that six weeks was insufficient time to prepare for a custody hearing and conduct discovery is no more meritorious here than it was in *Danner*.

[16] In sum, Father cannot demonstrate that the trial court abused its discretion when it denied his Motion to Continue. Accordingly, we affirm the trial court's judgment.

[17] Father also appeals both the order modifying legal custody and the order modifying parenting time. We address each in turn.

### *Modification of Custody*

[18] Father asserts that the trial court erred when it modified the parties' custody. Our standard of review in a custody modification is for abuse of discretion. *Julie C. v. Andrew C.*, 924 N.E.2d 1249, 1256 (Ind. Ct. App. 2010) (citations omitted). However, when the trial court enters findings and conclusions pursuant to Indiana Trial Rule 52, as it did here, our standard of review is as follows:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to

the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Estate of Kappel v. Kappel*, 979 N.E.2d 642, 651-52 (Ind. Ct. App. 2012) (quotation marks and citations omitted).

[19]    In *Julie C.*, 924 N.E.2d at 1259-60, we held that the trial court must consider three statutes when modifying legal custody: Indiana Code Sections 31-17-2-8, -15, and -21. Indiana Code Section 31-17-2-21 states in relevant part:

> (a) The court may not modify a child custody order unless:
>
> > (1) the modification is in the best interests of the child; and
> >
> > (2) there is a substantial change in one (1) or more of the factors that the court may consider under section 8 . . . of this chapter.
>
> (b) In making its determination, the court shall consider the factors listed under section 8 of this chapter.

Indiana Code Section 31-17-2-8 contains factors that the trial court must consider when making an initial custody order, namely:

> (1) The age and sex of the child.

(2) The wishes of the child's parent or parents.

(3) The wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age.

(4) The interaction and interrelationship of the child with:

    (A) the child's parent or parents;

    (B) the child's sibling; and

    (C) any other person who may significantly affect the child's best interests.

(5) The child's adjustment to the child's:

    (A) home;

    (B) school; and

    (C) community.

(6) The mental and physical health of all individuals involved.

(7) Evidence of a pattern of domestic or family violence by either parent.

(8) Evidence that the child has been cared for by a de facto custodian . . .

Finally, Indiana Code Section 31-17-2-15 contains factors that are pertinent specifically to joint legal custody:

> (1) the fitness and suitability of each of the persons awarded joint custody;

> (2) whether the persons awarded joint custody are willing and able to communicate and cooperate in advancing the child's welfare;

> (3) the wishes of the child, with more consideration given to the child's wishes if the child is at least fourteen (14) years of age;

> (4) whether the child has established a close and beneficial relationship with both of the persons awarded joint custody;

> (5) whether the persons awarded joint custody:

>> (A) live in close proximity to each other; and

>> (B) plan to continue to do so; and

> (6) the nature of the physical and emotional environment in the home of each of the persons awarded joint custody.

[20] Here, the trial court found that modification of custody from joint legal custody to sole legal custody with Mother was in the best interests of the children and that there had been a substantial change in the factors contained in Indiana Code Section 31-17-2-8. The court based that finding on: the wishes of Mother, the deterioration of communication between the parties, the children's

failure to properly complete homework when with Father, and the hostility or lack of agreement regarding parenting time exchanges. However, the trial court did not enter a finding that the deterioration of communication and hostility were solely attributable to Father. Rather, the court admonished both parties to timely complete exchanges of the children unless they can agree otherwise.

[21] The parties' mutual failure to cooperate cannot provide a basis for changing legal custody from joint to solely with Mother. As we have explained in another case involving a petition to modify joint custody:

> Generally, cooperation or lack thereof is not appropriate grounds for switching custody. Were a court to consider it in determining a change of custody, it would impermissibly punish a parent for noncompliance with a custody agreement. This is in accordance with the supremacy of the child's interest in permanence and stability over a parent's preferences. To do otherwise would be ignoring the very interest courts are trying to protect. Only in cases of egregious violations of custody where the child's welfare is at stake should a court modify a custody order. The noncustodial parent must show something more than isolated acts of misconduct by the custodial parent to warrant a modification of [a] child custody order; the noncustodial parent must show that the changed circumstances regarding the custodial parent's stability and the child's well-being are substantial and continuing.

*Pierce v. Pierce*, 620 N.E. 2d 726, 730 (Ind. Ct. App. 1993) (citation and quotations omitted), *trans. denied*. *Pierce* involved a petition to modify the same type of custody arrangement we have here, namely, joint legal custody, with one parent having sole physical custody. *Id*. at 728. Yet, even in a joint

custody arrangement, the *Pierce* court determined that a deterioration in parental communication is not a substantial change warranting custody modification unless it is so egregious as to adversely affect the child's welfare. *Id*. at 730. *Pierce*, unlike the instant case, did involve such egregious misbehavior. *Id*. at 731.

[22] Here, Mother failed to show substantial changes warranting modification of custody. Rather, Mother's contentions essentially amount to allegations of insufficient communication between the two parties. For example, at trial, Mother's counsel stated that, if Father had simply respected her and the pick-up times, drop-off times, and children's extracurricular activities, Mother would not have sought custody modification. Tr. at 104-05. However, those annoyances do not amount to continuous acts of misconduct that place the children's welfare at risk. *See id.*

[23] In addition, although Mother contends that the children's homework was not being completed while in Father's care, she did not present any evidence that indicates that the children were struggling academically. In *Hayley v. Hayley*, 771 N.E.2d 743, 748-49 (Ind. Ct. App. 2002), Father demonstrated a substantial change in his child's educational needs when Mother showed a lack of commitment in assisting their child, who was struggling academically, with her schoolwork at home. Mother told the Court Appointed Special Advocate that the school would take care of her child's academic difficulties. *Id.* However, Father worked with the child on her schoolwork when she stayed for the

weekend and she usually scored better on her spelling tests because they studied together. *Id.* There are no comparable circumstances in this case.

[24] Here, there was no egregious custody violation nor was the children's welfare at stake. *Pierce*, 620 N.E. 2d at 730. We must conclude that the trial court relied upon an incorrect legal standard and, thus, clearly erred when it found that there had been a substantial change in circumstances warranting modification of custody pursuant to Indiana Code § 31-17-2-8. *Kappel*, 979 N.E.2d at 651-52. Accordingly, we reverse the trial court's modification of custody.

## Modification of Parenting Time

[25] Mother sought not only modification of custody, but also modification of parenting time. When a custodial parent seeks to modify a parenting time order, as Mother did here, she must show that the modification would serve the best interest of the children. I.C. § 31-17-4-2. "However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development." *Id*. Moreover, "[d]espite the statute's use of the word 'might,' for over twenty-five years Indiana courts have interpreted the statute to require evidence that parenting time 'would' (not 'might') endanger or impair the physical or mental health of the child."[3] *Patton v. Patton*, 48 N.E.3d

---

[3] Thus, Indiana law requires a showing that there "would be" harm to the children from the original parenting time order, which Mother has not demonstrated here.

17, 21 (Ind. Ct. App. 2015) (quoting *Perkinson v. Perkinson*, 989 N.E.2d 758, 763 (Ind. 2013)). Thus, "a parent's visitation rights *shall not* be restricted unless the court finds that the visitation might endanger the child's physical health or significantly impair his emotional development." *Hartzell v. Norman T.L.*, 629 N.E.2d 1292, 1295 (Ind. Ct. App. 1994) (emphasis original).

[26] Here, the trial court did not make any finding that Father's visitation pursuant to the original parenting time order would endanger the children's physical health or significantly impair their emotional development, and no evidence was presented to support such a finding. Therefore, the trial court committed clear error in modifying Father's parenting time with the children.

[27] The dissent would hold that the trial court's reduction of Father's parenting time to the minimum contained in the parenting guidelines was not a "restriction" of his parenting time pursuant to Indiana Code Section 31-17-4-2, citing *Clary-Ghosh v. Ghosh*, 26 N.E.3d 986, 991 (Ind. Ct. App. 2015), *trans. denied*. However, that case does not cite any other Indiana case that supports that unique reading of the statute. Rather, Indiana cases have consistently held that a trial court is *required* to enforce a parenting time order, even if the order allows parenting time above the miminum required under the guidelines, *in the absence of* any finding that parenting time would endanger or significantly impair the child. *See, e.g.*, *Williamson v. Creamer*, 722 N.E.2d 863, 866 (Ind. Ct. App. 2000) (quoting *Hartzell*, 629 N.E.2d at 1295); *see also Patton*, 48 N.E.3d at 21. Thus, under long-standing Indiana case law, a parenting time order—even one in excess of the minimum parenting time allowed under the guidelines—cannot

be changed unless there is a finding that the parenting time allowed under the order would endanger the child's physical health or significantly impair his emotional development. *Hartzell*, 629 N.E.2d at 1295.

[28] Affirmed in part and reversed in part.

Robb, J., concurs.

Crone, J., concurs in part and dissents in part with separate opinion.

In re the Marriage of:

David A. Anzelmo,

*Appellant-Respondent,*

v.

Elizabeth M. Anzelmo,

*Appellee-Petitioner.*

Court of Appeals Case No.
17A03-1512-DR-2170

**Crone, Judge, concurring in part and dissenting in part.**

I agree with my colleagues that the trial court did not abuse its discretion in denying Father's motion to continue, and therefore I concur as to that issue. As to the custody issue, however, I respectfully dissent.

"[I]n custody disputes, the trial court is often called upon to make Solomon-like decisions in complex and sensitive matters. The trial court is in a position to see the parties, observe their conduct and demeanor, and hear their testimony; therefore, its decision receives considerable deference in an appellate court." *Trost-Steffen v. Steffen*, 772 N.E.2d 500, 509 (Ind. Ct. App. 2002) (citations and quotation marks omitted), *trans. denied*. "Custody modification lies within the

sound discretion of the trial court, and the decision will be reversed only upon a showing of manifest abuse of discretion. Such an abuse occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court." *L.C. v. T.M.*, 996 N.E.2d 403, 407 (Ind. Ct. App. 2013) (citation omitted). Modifications of parenting time are also reviewed for abuse of discretion. *Miller v. Carpenter*, 965 N.E.2d 104, 108 (Ind. Ct. App. 2012). We consider only the evidence favorable to the judgment and the inferences flowing therefrom. *Id.*

[31] With respect to both custody and parenting time, trial courts are uniquely positioned to observe which arrangements work and which do not. In my view, they should be given great latitude to craft proactive solutions in order to protect the best interests of the children involved. Trial courts should not be forced to wait until children suffer actual harm before they can take steps to resolve disagreements between the parties.

[32] Pursuant to Indiana Code Section 31-17-2-21, a court may not modify a child custody order unless the modification is in the child's best interests and there is a substantial change in one or more of the factors that the court may consider under Indiana Code Section 31-17-2-8. That statute sets forth a nonexhaustive list, stating that the court "shall consider *all* relevant factors, *including*" the eight factors mentioned in the majority's analysis. Ind. Code § 31-17-2-8 (emphases added). The trial court found that the communication between Mother and Father had "deteriorated … to the point where it is largely ineffective between the two parties[.]" Appellant's App. at 22. The majority characterizes this as a

"mutual failure to cooperate" and concludes that it "cannot provide a basis for changing legal custody from joint solely to Mother." Slip op. at 14. I respectfully disagree on both counts.

[33] The record strongly suggests that Father bore the primary responsibility for the deterioration in communication. The court found that Father "knowingly, willfully, and intentionally" refused to pay child support and reimburse Mother for the children's extracurricular activity expenses, which undoubtedly poisoned the well and prompted Mother to file the March 19 Rule to Show Cause. Appellant's App. at 20. Also, Mother testified that Father was repeatedly late for parenting exchanges, refused to take the children to their extracurricular activities, refused to allow her to schedule the children's medical appointments during his parenting time, and failed to help the children complete their homework assignments.

[34] More important, Mother testified that she never calls Father "because it always ends up in a confrontation" and that she could not "communicate those major issues of [her] children, specifically issues regarding their medical decisions or educational decisions with [Father.]" Tr. at 51. Indiana Code Section 31-9-2-67 provides that persons awarded joint legal custody "will share authority and responsibility for the major decisions concerning the child's upbringing, including the child's education, health care, and religious training." Due to the significant deterioration in the parties' ability to discuss major decisions concerning the children's upbringing, the joint legal custody arrangement had essentially become unworkable and therefore was no longer in the children's

best interests. The parties had tried it, it did not work, and the trial court, in my opinion, appropriately remedied the situation.

[35] Even if the deterioration in communication between Mother and Father could fairly be described as a "mutual failure to cooperate," *Pierce* does not prohibit a modification of joint legal custody on that basis. Notwithstanding the dicta quoted by the majority, the upshot of *Pierce*'s holding is that a parent with primary physical custody and joint legal custody may not be rewarded for being uncooperative by asking for and receiving sole legal custody based on the lack of cooperation. *See Pierce*, 620 N.E.2d at 731 ("A parent may not sow seeds of discord and reap improved custody rights."). That is not the factual scenario in this case. It is important to note that "joint custody" may be either joint legal custody or joint physical custody and that the difference between modifying joint legal custody and physical custody is a subtle yet important distinction.[4] When the parties in a joint legal custody situation are mutually responsible for a failure to cooperate on major decisions concerning the children's upbringing, the trial court must decide which parent should be awarded sole legal custody

---

[4] *See Pierce*, 620 N.E.2d at 731 ("The trial court found that [father] behaved in such way as to deprive [mother] of an opportunity to materially participate in the children's upbringing. *If the reasonableness of joint custody were not at issue, this course of conduct would not support a change in custody.*") (emphasis added). The majority's interpretation of *Pierce* may be due to the imprecise language and internal inconsistencies in the *Pierce* court's analysis or the fact that the custody modification statute in effect when *Pierce* was decided stated that a court could modify a custody arrangement only upon "a showing of changed circumstances so substantial and continuing as to make the existing custody order unreasonable." Ind. Code § 3-1-11.5-22(d) (1993). The legislature removed the unreasonableness requirement in 1994, and thus "a petitioner is no longer required to show that an existing custody order is unreasonable before a court will modify it." *Julie C.*, 924 N.E.2d at 1258. Regardless, the decision of whether a deterioration in parental communication is sufficiently "egregious as to adversely affect the child's welfare," as the majority puts it, is a call better left to the trial court than the Court of Appeals.

so that those decisions will no longer be subject to intractable disputes. To allow such uncooperativeness to continue would be detrimental to the children's best interests. Assuming for argument's sake that Mother and Father were mutually responsible for the deterioration in communication, I cannot conclude that the trial court abused its discretion in awarding sole legal custody to Mother based on the record before us.

[36] As for the trial court's modification of Father's parenting time, Indiana Code Section 31-17-4-2 provides,

> The court may modify an order granting or denying parenting time rights whenever modification would serve the best interests of the child. However, the court shall not restrict a parent's parenting time rights unless the court finds that the parenting time might endanger the child's physical health or significantly impair the child's emotional development.

Father claims that the trial court's reduction of his parenting time to the standard amount provided by the Indiana Parenting Time Guidelines amounted to a restriction of his parenting time rights and that the trial court erred in restricting his rights without making a finding of endangerment or impairment. I disagree. *See Clary-Ghosh*, 26 N.E.3d at 991 (holding that reduction of parenting time to standard amount described in Guidelines did not

amount to restriction of parenting time rights for purposes of Ind. Code § 31-17-4-2).[5]

[37] Further, I believe that the trial court did not abuse its discretion in reducing Father's parenting time, given Mother's testimony that she had to pick up Father's slack in several critical areas. The alternative of requiring actual damage or harm to the children prior to remedying this situation does not make sense. Father has the standard amount of parenting time allowed by the Guidelines. Parenting time is often a fluid situation that requires occasional tweaking, and awarding Mother more time was in the children's best interests and well within the trial court's discretion. I would affirm the trial court in all respects.

---

[5] The majority states that *Clary-Ghosh* "does not cite any other Indiana case that supports that unique reading of the statute." Slip op. at 17. In my view, this neither supports nor detracts from the logic of the reasoning used by the *Clary-Ghosh* court. While not dispositive, our supreme court had an opportunity to correct the *Clary-Ghosh* court's alleged misinterpretation of Indiana Code Section 31-17-4-2 on transfer but declined to do so. As for the cases cited by the majority, it bears mentioning that both *Hartzell* and *Williamson* were decided before the Indiana Parenting Time Guidelines became effective in 2001 and that *Patton* did not involve the reduction of parenting time to the standard amount described in the Guidelines. *See Patton*, 48 N.E.3d at 21 (denial of request for unsupervised visitation).